437 S.E.2d 277

**NORFOLK SOUTHERN RAILWAY COMPANY, Petitioner,**

v.

**Honorable Elliott E. MAYNARD, Judge of the Circuit Court of Mingo County and Junior Garrett, Respondents.**

No. 21811.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 14, 1993.

Decided Oct. 28, 1993.

Fred Adkins and Angela Wynn Konrad, Huddleston, Bolen, Beatty Porter & Copen, Huntington, for petitioner.

David Lycan, Lycan & Pratt, Wayne, and Gregory M. Tobin, Pratt, Bradford & Tobin, East Alton, for Junior Garrett.

NEELY, Justice:

The central issues presented in this appeal are whether the Norfolk Southern Railway Company[1] has sufficient contacts with this

1. Although the complaint and other pleadings identify the petitioner as the "Norfolk and Southern Railway Company," the petitioner's correct name is Norfolk Southern Railway Company according to the affidavit of Mahlon D. Edwards, the corporate secretary. Several of the exhibits also refer to the Southern Railway Company which was Norfolk Southern Railway's predecessor.

state for the Circuit Court of Mingo County to acquire *in personam* jurisdiction over it and whether the service of process was defective. A knowledge of the corporate players is necessary because jurisdiction is based on Norfolk Southern Railway's relationship with its wholly owned subsidiary, Norfolk and Western Railway Co., which does business in this state, and service of process was made on an employee of Norfolk Southern Corporation, the parent of Norfolk Southern Railway.[2]

Specifically, Norfolk Southern Railway seeks to vacate an order entered by Judge Elliott E. Maynard, dated 18 May 1993 that denied its motion to dismiss a complaint filed against it by Junior Garrett for lack of *in personam* jurisdiction, defective service of process and improper venue. Because no record was made concerning the issue of Norfolk Southern Railway's activities in West Virginia, we find no basis for issuing a writ of prohibition as requested; however, we do grant a writ as moulded requiring the circuit court to conduct a hearing to determine (1) whether Norfolk Southern Railway has sufficient minimum contacts with West Virginia that the maintenance of the underlying action does not offend traditional notions of fair play and substantial justice, and (2) whether the service of process was defective.

Mr. Garrett, a resident of Robbins, Tennessee, filed this action in the Circuit Court of Mingo County against his employer, Norfolk Southern Railway Company, under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.* Mr. Garrett alleges that on 15 January 1990, he became permanently injured when he lifted a tie while working for Norfolk Southern Railway in Morgan County, Tennessee.

Norfolk Southern Railway alleges that it does not do business in West Virginia because it employs no one, has no registered agent for service of process and maintains no station, no office and no track in this state. Norfolk Southern Railway is a Virginia corporation with its principal office located in Norfolk, Virginia. Norfolk Southern Railway asserts that it is an independent and distinct corporation from its wholly owned subsidiary, the Norfolk and Western Railway Company, which does do business in West Virginia. Norfolk Southern Railway is, in turn, a wholly owned subsidiary of Norfolk Southern Corporation. In order to demonstrate that Norfolk Southern Railway is a distinct corporation operated separately from Norfolk and Western, Norfolk Southern Railway submitted: (1) several affidavits that outlined the corporations' relationships and identified Norfolk Southern Railway as Mr. Garrett's employer; and, (2) part of a 1972 agreement between Norfolk Southern Railway's predecessor and the Brotherhood of Maintenance of Way Employees, Mr. Garrett's labor union, allegedly showing that none of the routes on which Mr. Garrett had

**2.** The following is a diagram of the corporate relationships:

seniority transverse West Virginia. Norfolk Southern Railway also asserts that the service of process was defective because service was not made on its agent, but on an employee of its parent, Norfolk Southern Corporation.

Mr. Garrett alleges that Norfolk Southern Railway has minimum contacts with West Virginia because it solicits business here and because it and its subsidiary, Norfolk and Western, operate as one entity.[3] In support of his allegations, Mr. Garrett submitted part of an article apparently from *The Official Railway Guide*, May/June 1992, listing six persons in West Virginia among Norfolk Southern Railway's personnel and a map showing that Norfolk Southern Railway's tracks extend into the southern and western parts of this state.[4] Mr. Garrett also alleges that Norfolk Southern Railway waived its objections by not limiting its appearance to the question of jurisdiction and by proceeding with discovery.

I

■ In each case the reasonableness of a state's exercise of jurisdiction over a nonresident foreign corporation must focus on a qualitative analysis of the foreign corporation's contacts with the forum state. *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). The determination of personal jurisdiction stands or falls on each case's unique facts and precludes the use of "mechanical tests" and "talismanic jurisdictional formulas." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 485, 105 S.Ct. 2174, 2185, 2189, 85 L.Ed.2d 528 (1985).

■ The Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), delineated the following elements as necessary for a state to acquire jurisdiction over a nonresident defendant:

[I]n order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he [must] have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*International Shoe* at 316, 66 S.Ct. at 158. Recently, in Syl. Pt. 1, *Hill by Hill v. Showa Denko, K.K.*, 188 W.Va. 654, 425 S.E.2d 609 (1992) *cert. denied*, —— U.S. ——, 113 S.Ct. 2338, 124 L.Ed.2d 249 (1993) (holding that personal jurisdiction can be "premised on the placement of a product into the stream of commerce"), this Court repeated our standard for jurisdictional due process:

"The standard of jurisdictional due process is that a foreign corporation must have such minimum contacts with the state of the forum that the maintenance of an action in the forum does not offend traditional notions of fair play and substantial justice." Syllabus Point 1, *Hodge v. Sands Manufacturing Company*, 151 W.Va. 133, 150 S.E.2d 793 (1966).

The critical element for determining minimum contacts is not the volume of the activity but rather "the quality and nature of the activity in relation to the fair and orderly administration of the laws." *International Shoe* at 319, 66 S.Ct. at 160. Indeed "the foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980), quoted in *Hill by Hill, supra*, 188 W.Va. at 657, 425 S.E.2d at 612. The Supreme Court in *World–Wide Volkswagen* set the limits necessary to establish reasonable contacts:

The relationship between the defendant and the forum must be such that it is "reasonable ... to require the corporation

---

3. The record does not indicate why Mr. Garrett, who lives, worked, was injured and was treated in Tennessee, chose Mingo County, West Virginia for his forum. During oral argument, Gregory M. Tobin, Mr. Garrett's lawyer whose office is in East Alton, Illinois, indicated that he represents several FELA plaintiffs whose cases are pending in Mingo County, West Virginia.

4. Neither the affidavits submitted by Norfolk Southern Railway, the corporate records nor informational article submitted by Mr. Garrett appear to have been considered by the circuit court and no transcripts were part of the record.

to defend the particular suit which is brought there." (Citations omitted.) Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute, *see McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, [78 S.Ct. 199, 201, 2 L.Ed.2d 223] (1957); the plaintiff's interest in obtaining convenient and effective relief, *see Kulko v. California Superior Court, supra*, [436 U.S. 84] at 92 [98 S.Ct. 1690, [at 1696–97] 56 L.Ed.2d 132 (1978) ], at least when that interest is not adequately protected by the plaintiff's power to choose the forum, *cf. Shaffer v. Heitner*, 433 U.S. 186, 211 n. 37, [97 S.Ct. 2569, 2583 n. 37, 53 L.Ed.2d 683] (1977); the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies, *see Kulko v. California Superior Court, supra*, [436 U.S.] at 93, 98 [98 S.Ct. at 1697, 1700].
*World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564–65, quoted in *Hill by Hill, supra. See also Pries v. Watt*, 186 W.Va. 49, 52, 410 S.E.2d 285, 288 (1991) ("[t]o what extent the defendant has minimum contacts depends upon the facts of the individual case").

■ In addition to the requirements for *in personam* jurisdiction outlined in *International Shoe* and its progeny, a FELA plaintiff is limited by statute to the following forums: (1) where the cause of action arose; (2) where the defendant resides; or, (3) where the defendant is doing business at the time such action is commenced. 45 U.S.C. § 56. State courts are free to apply the *forum non conveniens* doctrine, when appropriate, because the FELA does not require state courts to entertain suits arising under it. *Missouri ex rel. Southern R. Co. v. Mayfield*, 340 U.S. 1, 71 S.Ct. 1, 95 L.Ed. 3 (1950). In *Miles v. Illinois Cent. R. Co.*, 315 U.S. 698, 705, 62 S.Ct. 827, 831, 86 L.Ed. 1129 (1942), the Supreme Court held that Congress restricted the forums where a plaintiff may bring a FELA claim to those in which "the carrier is found doing business."

"Doing business" has been defined as "actually carrying on railroading by operating trains and maintaining traffic offices within the territory of the court's jurisdiction." *Miles* at 702, 62 S.Ct. at 829.

The *Miles*'s jurisdictional requirement of "carrying on railroading" means that a defendant railroad must do more than merely solicit business. *Green v. Chicago, B. & Q. R. Co.*, 205 U.S. 530, 533–34, 27 S.Ct. 595, 596, 51 L.Ed. 916 (1907); *Philadelphia & Reading R. Co. v. McKibbin*, 243 U.S. 264, 268, 37 S.Ct. 280, 281–82, 61 L.Ed. 710 (1917) (the presence of a corporation's subsidiary does not justify finding the corporation is also doing business); *People's Tobacco Co. v. American Tobacco Co.*, 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587 (1918). *See also, MacKinnon v. St. Louis Southwestern Ry. Co.*, 518 So.2d 89 (Ala.1987) (discussing the facts showing that a railroad was "doing business" and, therefore, subject to *in personam* jurisdiction in the FELA suit).

■ A parent-subsidiary relationship between corporations, one of which is "doing business" in this state, does not without the showing of additional factors subject the nonresident corporation to this state's jurisdiction. However, if the parent and its subsidiary operate as one entity, their formal separate corporate structures will not prevent the assertion of jurisdiction over the non-resident corporation. The extent of control exercised by the non-resident corporation over the corporation doing business in this state determines when the non-resident corporation is subject to this state's jurisdiction. In *Botwinick v. Credit Exchange, Inc.*, 419 Pa. 65, 72, 213 A.2d 349, 354 (1965), the Pennsylvania Supreme Court noted that a subsidiary's activities may subject its parent to the jurisdiction of the court in a state where the subsidiary engages in business activity.

There is a well recognized exception to these general rules if the record demonstrates that the subsidiary is the "alter ego" of the parent to the extent that domination and control by the parent corporation renders the subsidiary a mere instrumentality of the parent; under such extreme circumstances the parent corpora-

tion may be held to be doing business within the state under the facade of the subsidiary. [Citations omitted.]

█ We find that the determination of when a foreign parent corporation, whose subsidiary is present in this state, is subject to the jurisdiction of this state's courts must be made on a case by case basis. In *Bielicki v. Empire Stevedoring Co., Ltd.,* 741 F.Supp. 758, 761–62 (D.Minn.1990), the federal district court considered the following factors to determine whether to pierce the corporate veil:

(1) Whether the parent corporation owns all or most of the capital stock of the subsidiary;

(2) Whether the parent and subsidiary corporations have common directors and officers;

(3) Whether the parent corporation finances the subsidiary;

(4) Whether the parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation;

(5) Whether the subsidiary has grossly inadequate capital;

(6) Whether the parent corporation pays the salaries and other expenses or losses of the subsidiary;

(7) Whether the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation;

(8) Whether in the papers of the parent corporation or in the statement of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own;

(9) Whether the parent corporation uses the property of the subsidiary as its own;

(10) Whether the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest; and

(11) Whether the formal legal requirements of the subsidiary are not observed. [Citation omitted.]

*See also, United Elec. Radio and Mach. Workers of America v. 163 Pleasant Street Corp.,* 960 F.2d 1080, 1092–93 (1st Cir.1992) (adopting a federal veil-piercing standard for ERISA cases requiring proof of a lack of corporate independence, fraudulent intent, and manifest injustice); *FDIC v. British–American Corp.,* 726 F.Supp. 622, 629 (E.D.N.C.1989) (a parent corporation cannot "hide behind the fiction of a subsidiary and enjoy the benefits of a forum" without accepting the responsibilities); *People v. Parsons Co.,* 122 Ill.App.3d 590, 78 Ill.Dec. 74, 461 N.E.2d 658 (Ill.App.1984) (when a parent and subsidiary operate as separate entities and the alleged control by the parent over the subsidiary is insufficient to establish the parent's "transaction of business," the parent is not answerable for acts of subsidiary); *Barber v. Pittsburgh Corning Corp.,* 317 Pa.Super. 285, 464 A.2d 323 (Pa.Super.1983) *cert. denied* 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 346 (1984) (exercise of jurisdiction over parent justified because of parent's domination of subsidiary); *Jayne v. Royal Jordanian Airlines Corp.,* 502 F.Supp. 848, 856 (S.D.N.Y.1980) ("[t]he 'presence' of a corporation may also be established, however, by activities conducted in its behalf in the state by an agent"); Syl. Pt. 3, in part, *Southern Elec. Supply Co. v. Raleigh County Nat. Bank,* 173 W.Va. 780, 320 S.E.2d 515 (1984) ("[t]he law presumes that two separately incorporated businesses are separate entities").

## II

Norfolk Southern Railway also alleges that the service of process on B.R. Tuck, a District Claim Agent for the Norfolk Southern Corporation, the parent of Norfolk Southern Railway, was defective. Mr. Tuck, by affidavit, states that he is not an employee, agent, officer or director of the Norfolk Southern Railway. The defective service of process argument was not addressed by Mr. Garrett and, again as in the jurisdiction question, there is no record of a hearing or the circuit court's reasoning. Unlike the jurisdiction issue in which Mr. Garrett asserts jurisdiction

over Norfolk Southern Railway based on the activities of its subsidiary Norfolk and Western, in the service of process issue, Mr. Garrett relies on service on an employee of Norfolk Southern Corporation, the parent of Norfolk Southern Railway.

Rule 4(d)(8) of the *W.Va. RCP* [1990], provides, in pertinent part, that service of process "shall be made ... [u]pon a foreign corporation, including a business trust, which has not qualified to do business in the State, (A) by delivering a copy of the summons and of the complaint to any officer, director, trustee, or agent of such corporation; or (B) by delivering copies thereof to any agent or attorney in fact authorized by appointment or by statute to receive or accept service in its behalf."

 When a parent-subsidiary relationship exists between corporations, either the parent or the subsidiary may be the agent of the other related corporation for the purpose of service of process. Although there is no precise test for defining how much control a parent corporation must exert over its domestic subsidiary before one corporation will be deemed an agent of the other for the purpose of service of process, each case will be considered on its facts in order to determine if more than a parent-subsidiary relationship exists. Essentially, the question of when one corporation is another corporation's agent for service of process is one of agency law with particular emphasis on the nature of the relationship and the degree of control exercised.

In *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925), the United States Supreme Court held that a parent-subsidiary relationship, by itself, is not sufficient to justify severance of the subsidiary as an agent for the parent corporation. Although in *Cannon* service of process was made on the subsidiary as agent for the parent, rather than on the parent as in the present case, this factual distinction does not affect the Supreme

Court's reasoning concerning when one corporation becomes the other corporation's agent for severance. *See Akari Imeji Co. v. Qume Corp.*, 748 F.Supp. 588, 591 (N.D.Ill. 1990) (holding "[t]here is no precise test for defining how much control a foreign parent corporation must wield over its domestic subsidiary before the subsidiary will be deemed its agent for the purposes of service"); *Geick v. American Honda Motor Co.*, 117 F.R.D. 123 (C.D.Ill.1987) (record of control insufficient for finding the existence of any more than a parent-subsidiary relationship); *Schlunk v. Volkswagenwerk Aktiengesellschaft*, 145 Ill.App.3d 594, 105 Ill.Dec. 39, 503 N.E.2d 1045 (1986), *aff'd* 486 U.S. 694, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988) (identified several factors to consider when deciding if a parent-subsidiary relationship is close enough to allow service of process on a wholly owned subsidiary of a foreign corporation); *Stoehr v. American Honda Motor Co., Inc.*, 429 F.Supp. 763, 766 (D.Neb.1977) ("plaintiff has not demonstrated an underlying unity between ... [the corporations], sufficient to support this Court piercing ... [the] corporate veil and reaching" the parent through service of process on the subsidiary).

### III

 In the present case, the jurisdiction and service of process issues raise two factual questions: first, whether Norfolk Southern Railway, either by virtue of its relationship with its subsidiary, Norfolk and Western Railway, or by its own activities, has sufficient contacts with West Virginia to subject it to the jurisdiction of this state's courts; and second, whether an employee of Norfolk Southern Corporation, the parent of Norfolk Southern Railway, is considered an agent of Norfolk Southern Railway for service of process under Rule 4(d)(8) of the *W.Va. RCP*. Apparently these matters were not considered below and each party has not had the opportunity to respond to the other's allegations.[5]

---

**5.** Although Mr. Garrett maintains that the railway by pursuing discovery in this case waived its objection to any lack of personal jurisdiction, we find no merit in this argument because once a defendant expresses its objection to the court's

jurisdiction, as provided by Rule 12(b) of *W.Va. RCP*, "the character of any further appearances at the trial, whether special or general, is immaterial and such appearance does not constitute a waiver of such objection." Syl. Pt. 2, in part,

Although a writ of prohibition is the traditional remedy to challenge the actions of a trial court when that court acts without jurisdiction (*see W.Va.Code* 53–1–1 [1923] ), the right to prohibition must be clearly shown before a petitioner is entitled to this extraordinary remedy.[6] *See Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979) (outlining the criteria for a writ of prohibition). *See also State ex rel. Maynard v. Bronson,* 167 W.Va. 35, 41, 277 S.E.2d 718, 722 (1981) ("[t]he right to prohibition must clearly appear"); *State v. Lewis,* 188 W.Va. 85, 95, 422 S.E.2d 807, 817 (1992) (lack of a factual record foreclosed granting of a writ of prohibition).

In the present case, there is no record except for the parties' assertions and exhibits. Based on the lack of evidence, we find that the railway has not shown that it is entitled to a writ of prohibition as requested; however, we find that the railway's assertions are sufficiently serious under *Hinkle, supra,* to entitle it to a hearing on the activities of the Norfolk Southern Railway and its subsidiary to determine whether the activities of the subsidiary are sufficient to hold the parent, Norfolk Southern Railway, to be doing business in this state and to determine whether an employee of Norfolk Southern Corporation, the parent of Norfolk Southern Railway, is an agent of Norfolk Southern Railway for service of process under Rule 4(d)(8) of the *W.V. RCP.*

Accordingly for the reasons set forth above a writ of prohibition, as moulded, is awarded.

Writ, as moulded, awarded.

---

*Teachout v. Larry Sherman's Bakery Inc.,* 158 W.Va. 1020, 216 S.E.2d 889 (1975).

**6.** Although the right to a writ of prohibition must be shown by a petitioner, a plaintiff has the burden of establishing personal jurisdiction over a defendant and if jurisdiction is challenged by a defendant, "a hearing is required at which the plaintiff must establish personal jurisdiction by a preponderance of the evidence." *Palmieri v. Estefan,* 793 F.Supp. 1182, 1186 (S.D.N.Y.1992). *See Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2nd Cir.) *cert. denied,* 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990).