495 S.E.2d 843

The TOWN OF FAYETTEVILLE,
and the State of West Virginia,
Plaintiffs Below, Appellants,

v.

Lewis LAW, Individually; Mine Management, Inc., a Corporation; Mountain Laurel Resources Company (formerly New River Company), a Corporation; CSX Minerals, Inc., a Corporation; CSX Corporation, a Corporation; and CSX Transportation, Inc., a Corporation, Defendants Below, Appellees.

No. 24117.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 1997.

Decided Oct. 3, 1997.

Travers R. Harrington, Jr., Jesser & Harrington Fayetteville, for the Appellant Town of Fayetteville.

Mark J. Rudolph, Craig B. Giffin, West Virginia Division of Environmental Protection, Charleston, for the Appellant State of West Virginia.

William G. Broaddus, E.E. Matthews, III, McGuire, Woods, Battle & Boothe, Richmond, VA, James M. Brown, Jane E. Harkins, Brown & Levicoff, Beckley, for Appellee CSX Corporation.

Richard E. Rowe, Suzanne Jett Trowbridge, Goodwin & Goodwin, Charleston, for Appellees CSX Minerals, Inc. and CSX Transportation, Inc.

Per Curiam:

These four consolidated actions are before this Court upon an appeal from the final order of the Circuit Court of Fayette County, West Virginia, entered on July 15, 1996. In the complaints filed below, the appellants, the Town of Fayetteville and the State of West Virginia, contend that they are entitled to damages and injunctive relief because of pollution emanating from a coal refuse pile in

the Summerlee, Fayette County, area. According to the appellants, a number of defendants, including the appellee, CSX Corporation, are responsible for the pollution. The sole issue before this Court, however, is whether the circuit court committed error in granting the motion of CSX Corporation to dismiss for lack of personal jurisdiction.

This Court has before it the joint petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, this Court is of the opinion that the circuit court, in conducting a hearing on the motion to dismiss pursuant to *Norfolk Southern Railway Company v. Maynard*, 190 W.Va. 113, 437 S.E.2d 277 (1993), committed error in failing to consider certain relevant evidence concerning the relationship between CSX Corporation, a Virginia corporation, and its wholly owned subsidiaries doing business in this State, with regard to the Summerlee site. Accordingly, we reverse the final order and remand these actions to the circuit court for a more complete consideration of the jurisdictional question under the *Norfolk Southern* case.

## I

### The Motion to Dismiss

The Summerlee site, a 241–acre tract of land in Fayette County, was owned by the New River Company and used for coal mining operations until the 1950's. Thereafter, New River maintained a coal refuse pile upon the site and, in 1977, leased the property to Lewis Law and Mine Management, Inc. for the removal, processing and marketing of coal from the refuse pile and from slurry ponds located nearby. On April 1, 1980, New River sold the Summerlee property in its entirety to Lewis Law and Mine Management, Inc.

Asserting that coal refuse drainage from the Summerlee site had polluted, and continues to pollute, the headwaters of streams in the area, the appellants instituted various civil actions seeking damages and injunctive relief concerning the problem. The actions were instituted over a period of years and have now been consolidated. In addition to naming New River, Lewis Law and Mine Management, Inc., as defendants in the litigation, the appellants also named Western Pocahontas Corporation and CSX Corporation as defendants. Importantly, during the period in question, New River was a wholly owned subsidiary of Western Pocahontas, and Western Pocahontas, in turn, was a wholly owned subsidiary of CSX Corporation. Western Pocahontas was a land holding and leasing company with offices in Huntington, West Virginia. CSX Corporation, on the other hand, was a Virginia corporation with offices in the City of Richmond.[1] According to the appellants, the defendants' management of the Summerlee site violated the West Virginia Water Pollution Control Act, *W. Va. Code*, 22–11–1 [1994], *et seq.*, and violated this State's common law relating to public nuisance. Moreover, the appellants assert that the violations are continuing.

---

**1.** As stated above, the sole issue before this Court is whether the circuit court committed error in granting the motion of CSX Corporation to dismiss for lack of personal jurisdiction. Accordingly, it is not necessary to extensively set forth the complex history of this litigation or the convoluted identities of the various corporations involved.

It should be noted, however, that, in March 1995, the circuit court entered summary judgment against Lewis Law and Mine Management, Inc., upon the issue of liability. An appeal from that ruling was refused by this Court on May 29, 1996. In addition, Lewis Law and Mine Management, Inc., were criminally prosecuted for the discharge of pollution at the Summerlee site, and felony convictions were obtained. *United States v. Law*, 979 F.2d 977 (4th Cir.1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1844, 123 L.Ed.2d 468 (1993).

With regard to corporate identities, it should be noted that the New River Company, the grantor of the Summerlee site, later became Mountain Laurel Resources Company. Its parent, Western Pocahontas, became CSX Minerals, Inc. CSX Corporation, the parent of Western Pocahontas, owned another subsidiary by the name of CSX Transportation, Inc.

There are no corporate connections between CSX Corporation and its affiliated subsidiaries, on the one hand, and Lewis Law and Mine Management, Inc., on the other. Moreover, only CSX Corporation has raised the issue of personal jurisdiction before this Court. Lewis Law, Mine Management, Inc., and New River have not participated in this appeal. CSX Minerals, Inc. (Western Pocahontas), and CSX Transportation, Inc., filed a joint brief in support of CSX Corporation.

In October 1995, CSX filed a motion to dismiss for lack of personal jurisdiction. *W. Va. R. Civ. P.* 12(b)(2). Specifically, CSX Corporation asserted that, as a Virginia corporation with little or no contacts with West Virginia, personal jurisdiction over CSX Corporation could not be obtained under either State or federal standards. Syl. pt. 5, *Abbott v. Owens-Corning Fiberglas Corporation,* 191 W.Va. 198, 444 S.E.2d 285 (1994).[2] In response to the motion, the appellants asserted a "piercing the corporate veil" theory, indicating a lack of corporate separateness among New River, Western Pocahontas and CSX Corporation with regard to the Summerlee site. The circuit court scheduled an evidentiary hearing upon the motion pursuant to *Norfolk Southern, supra.*

## II

### The Motion in Limine

Prior to the scheduled hearing on the motion to dismiss, CSX Corporation filed a motion in limine to exclude all post April 1, 1980, evidence. As the motion in limine stated: "Because the New River Company sold the property at issue in this matter to Lewis Law on behalf of Mine Management, Inc., in April 1980, any post April 1980 evidence is irrelevant in proving piercing claims."

Following argument by the parties, the circuit court, emphasizing that there was no corporate connection between CSX Corporation and its affiliated subsidiaries, on the one hand, and Lewis Law and Mine Management, Inc., on the other, granted the motion in limine. As the circuit court stated: "Whatever relationship thereafter existed between New River Company, its parent Western Pocahontas, or between the successor of Western Pocahontas, CSX Minerals, and

CSX Corporation after that date of New River Company's sale of the site would not be relevant[.]"

The evidentiary hearing upon the motion of CSX Corporation to dismiss was conducted on April 8 and 9, 1996. The evidence submitted by the appellants included the testimony of employees of New River who indicated (1) that loans of money were made by CSX Corporation or Western Pocahontas to New River without the financial documentation · commonly used between independent business entities, (2) that, unlike other buyers, New River employees could purchase CSX Corporation stock at a discount, (3) that the president of CSX Corporation visited the New River premises on several occasions and (4) that mine drainage problems occurred at the Summerlee site prior to 1980. The evidence of CSX Corporation, however, indicated that the New River Company conducted business at the Summerlee site in a manner independent of CSX Corporation and Western Pocahontas. Specifically, concluding that the evidence of CSX Corporation was persuasive, the circuit court, *inter alia,* found (1) that New River did not have grossly inadequate capital, (2) that the obtaining of financing by New River was not out of the course of ordinary business, (3) that no evidence was submitted to the effect that officers of New River were ever instructed to take action inconsistent with the interests of the New River Company and (4) that there was no evidence that New River did not observe the formal requirements followed by an independent corporation.

Following the hearing, the circuit court concluded that there was no evidence of a lack of corporate separateness among CSX

---

2. As *W. Va. R. Civ. P.* 12(b)(2) provides, "the following defenses may at the option of the pleader be made by motion: ... lack of jurisdiction over the person [.]" In that regard, syllabus point 5 of *Abbott, supra,* states:

A court must use a two-step approach when analyzing whether personal jurisdiction exists over a foreign corporation or other nonresident. The first step involves determining whether the defendant's actions satisfy our personal jurisdiction statutes set forth in *W. Va.Code,* 31-1-15 [1984] and *W. Va.Code,* 56-3-33 [1984]. The second step involves determining whether the defendant's contacts with the forum state satisfy federal due process.

Here, in support of the motion to dismiss, CSX Corporation filed the affidavit of Rachel E. Geiersbach, its Assistant Corporate Secretary, which stated, in part, that CSX Corporation had no offices or employees in West Virginia and owned no real or personal property in West Virginia. Moreover, as the affidavit concluded: "CSX Corporation neither does business nor transacts business in West Virginia, nor is it or has it ever been authorized under West Virginia law to do business in West Virginia."

Corporation and its affiliated subsidiaries which would justify piercing the corporate veil.[3] Accordingly, as reflected in the final order of July 15, 1996, the circuit court granted the motion of CSX Corporation to dismiss for lack of personal jurisdiction. In so ruling, the circuit court allowed the appellants to vouch the record with post April 1, 1980, evidence, excluded through the granting of the motion in limine.[4]

## III

## Discussion

■ Indicating that the standard of review concerning the granting of a motion to dismiss generally involves a question of law, this Court observed in syllabus point 2 of *State ex rel. State ex rel. McGraw v. Scott Runyan Pontiac–Buick,* 194 W.Va. 770, 461 S.E.2d 516 (1995), that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*" *See also Richardson v. Kennedy,* 197 W.Va. 326, 331, 475 S.E.2d 418, 423 (1996). A motion to dismiss for lack of personal jurisdiction is somewhat exceptional, however, in that a circuit court's consideration of such a motion can involve an evidentiary hearing, with the burden of proof upon the party asserting jurisdiction. As this Court recently held in syllabus point 4 of *State ex rel. Bell Atlantic–West Virginia, Inc. v. Ranson,* 201 W.Va. 402, 497 S.E.2d 755 (1997):

When a defendant files a motion to dismiss for lack of personal jurisdiction under *W. Va. R. Civ. P.* 12(b)(2), the circuit court may rule on the motion upon the pleadings, affidavits and other documentary evidence or the court may permit discovery to aid in its decision. At this stage, the party asserting jurisdiction need only make a *prima facie* showing of personal jurisdiction in order to survive the motion to dismiss. In determining whether a party has made a *prima facie* showing of personal jurisdiction, the court must view the allegations in the light most favorable to such party, drawing all inferences in favor of jurisdiction. If, however, the court conducts a pretrial evidentiary hearing on the motion, or if the personal jurisdiction issue is litigated at trial, the party asserting jurisdiction must prove jurisdiction by a preponderance of the evidence.

■ Thus, in addition to the *de novo* standard of review, where an evidentiary hearing is conducted upon a motion to dismiss for lack of personal jurisdiction, this Court's "clearly erroneous" standard of review is ordinarily invoked concerning a circuit court's findings of fact. *See* syl. pt. 1, *McCormick v. Allstate Insurance Company,* 197 W.Va. 415, 475 S.E.2d 507 (1996) (underlying factual findings are reviewed under a "clearly erroneous" standard). Nevertheless, in this matter, the circuit court's findings of fact notwithstanding, the dispositive issue before this Court, as explained below, concerns the pro-

3. The final order entered by the circuit court states:

   Because Plaintiffs have failed to meet their burden of proving the lack of corporate separateness between New River and Western Pocahontas and between Western Pocahontas and CSX Corporation, CSX Corporation does not, by virtue of its relationship with these two companies, or by its own activities, have sufficient contacts with West Virginia to subject it to the jurisdiction of this State's court.

4. The appellants contend that the post April 1, 1980, evidence is critical to the issue of jurisdiction over CSX Corporation because CSX Corporation allegedly controlled New River during that period and depleted New River's assets in order to avoid financial responsibility associated with the "continuing nature" of coal refuse drainage emanating from the Summerlee site. In fact, asserting that Lewis Law and Mine Management,

Inc., took no action "to create the mine dump or to add to it," and lacked the financial resources to deal with the problem, the Town of Fayetteville's reply brief filed before this Court states: "[T]he reason the citizens of Fayetteville and the taxpayers of West Virginia are left holding the bag, is because CSX removed the viable assets of ... New River without consideration.... If the ruling below stands, CSX will have successfully compartmentalized its liability subsidiaries from its asset subsidiaries."

Specifically, following the granting of the motion in limine, both appellants filed a written offer of proof to vouch the record before the circuit court. According to the appellants, the excluded post April 1, 1980, evidence revealed, *inter alia,* (1) interlocking directorates among CSX Corporation and its affiliated subsidiaries, (2) control, generally, by CSX Corporation over its subsidiaries and (3) the "usurpation of assets" by CSX Corporation of its subsidiaries.

priety of the circuit court's ruling in excluding the post April 1, 1980, evidence pursuant to the motion in limine. Inasmuch as the "clearly erroneous" standard is not helpful in that regard, the *de novo* standard must be applied.

As indicated above, the circuit court conducted the evidentiary hearing concerning the motion of CSX Corporation to dismiss pursuant to the *Norfolk Southern* case. In *Norfolk Southern*, an injured worker instituted an action in the Circuit Court of Mingo County, West Virginia, under the Federal Employers' Liability Act. The defendant, Norfolk Southern Railway Company, a Virginia corporation, filed a motion to dismiss for lack of personal jurisdiction. The circuit court denied the motion. Upon review, the issue before this Court, in *Norfolk Southern*, was whether the injured worker had established that Norfolk Southern Railway Company, the Virginia corporation, and Norfolk and Western Railway Company, a wholly owned subsidiary which did business in West Virginia, had operated as "one entity" for jurisdictional purposes.

In *Norfolk Southern*, this Court recognized that the determination of when a foreign parent corporation, whose subsidiary is present in this State, is subject to this State's jurisdiction "must be made on a case by case basis." 190 W.Va. at 118, 437 S.E.2d at 282.[5] As syllabus point 2 of *Norfolk Southern* states:

A parent-subsidiary relationship between corporations, one of which is 'doing business' in West Virginia, does not without the showing of additional factors subject the nonresident corporation to this state's jurisdiction. However, if the parent and its subsidiary operate as one entity, their formal separate corporate structures will not prevent the assertion of jurisdiction over the non-resident corporation. The extent of control exercised by the non-resident corporation over the corporation doing business in this state determines whether the non-resident corporation is subject to this state's jurisdiction.

Under the facts of *Norfolk Southern*, however, this Court noted a "lack of evidence" concerning Norfolk Southern Railway Company's actions concerning its West Virginia subsidiary. Accordingly, this Court resolved the problem by holding that the parties were entitled to an evidentiary hearing before the circuit court upon the jurisdictional issue.

In this matter, although an evidentiary hearing was conducted pursuant to the *Norfolk Southern* case, evidence concerning the relationship, after April 1, 1980, between CSX Corporation and its wholly owned subsidiaries doing business in this State, with regard to the Summerlee site, was excluded as irrelevant pursuant to the motion in limine. According to CSX Corporation, the circuit court correctly excluded that evidence because, on that date, the property was con-

**5.** In stating that personal jurisdiction, in the parent-subsidiary context of *Norfolk Southern*, "must be made on a case by case basis," this Court, in the *Norfolk Southern* opinion, set forth the following factors to be considered concerning piercing the corporate veil:

(1) Whether the parent corporation owns all or most of the capital stock of the subsidiary;
(2) Whether the parent and subsidiary corporations have common directors and officers;
(3) Whether the parent corporation finances the subsidiary;
(4) Whether the parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation;
(5) Whether the subsidiary has grossly inadequate capital;
(6) Whether the parent corporation pays the salaries and other expenses or losses of the subsidiary;
(7) Whether the subsidiary has substantially no business except with the parent corporation

or no assets except those conveyed to it by the parent corporation;
(8) Whether in the papers of the parent corporation or in the statement of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own;
(9) Whether the parent corporation uses the property of the subsidiary as its own;
(10) Whether the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest; and
(11) Whether the formal legal requirements of the subsidiary are not observed.
190 W.Va. at 118, 437 S.E.2d at 282.

Although limiting its consideration to pre-April 1, 1980, evidence, the circuit court herein utilized the above factors in granting the motion of CSX Corporation to dismiss.

veyed in its entirety to Lewis Law and Mine Management, Inc. In that regard, CSX Corporation contends that it is not subject to personal jurisdiction in West Virginia because (1) neither it nor its affiliated subsidiaries are responsible for the actions of the unrelated grantees, i.e., Lewis Law and Mine Management, Inc., and (2) the "piercing the corporate veil" theory is applicable only to the time during which New River owned the Summerlee site and, thus, could have allowed pollution to occur on the property. *See William C. Atwater & Co. v. Fall River Pocahontas Collieries,* 119 W.Va. 549, 561, 195 S.E. 99, 105 (1937) (stating that "the corporate entity cannot be disregarded haphazardly.").

The appellants, on the other hand, contend that a substantial portion of their evidence, in establishing personal jurisdiction over CSX Corporation, was excluded by the granting of the motion in limine. Thus, according to the appellants, the evidence actually adduced at the hearing was less than dispositive of the motion of CSX Corporation to dismiss. Rather, the appellants emphasize that they have made allegations to the effect that the defendants, including CSX Corporation through its control of its affiliated subsidiaries, have polluted, and *continue to pollute,* streams in the Summerlee area through coal refuse drainage. As the appellants state, those allegations, if proved, constitute violations of the West Virginia Water Pollution Control Act, *W. Va.Code,* 22–11–1 [1994], *et seq.,* and this State's common law relating to public nuisance.

In the recent decision of this Court in *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.,* 200 W. Va. 221, 488 S.E.2d 901 (1997), a case involving hazardous waste drainage, the Water Pollution Control Act [6] and the law relating to public nuisance were discussed. In *Kermit,* a lessee operated a lumber treating business in Mingo County, West Virginia, which resulted in multiple spills of harmful chromium and arsenic into the soil and nearby river. The business was opened in 1977 and terminated in 1988. According to the West Virginia Division of Environmental Protection, however, instead of remediating the problem, the lessee dismantled the business site and regraded the soil to hide the contamination. For several years subsequent to 1988, the hazardous waste remained on the property.

In 1995, the Division of Environmental Protection, in *Kermit,* filed an action in the Circuit Court of Mingo County alleging, *inter alia,* that the lessee had transgressed this State's Water Pollution Control Act and the common law of public nuisance. The Division sought to compel the lessee to clean up the hazardous waste at the site and, in addition, sought civil penalties and damages. Upon the lessee's motion, however, the circuit court dismissed the action as untimely under the statute of limitations. This Court, in *Kermit,* reversed the dismissal and held in syllabus points 10 and 11 as follows:

10. The general one-year statute of limitations found in *W. Va.Code,* 55–2–12(c) [1959] 'accrues' when any person 'violates any provision of [the Water Pollution Control Act, found in *W. Va.Code,* 22–11–1 *et*

---

6. *W. Va.Code,* 22–11–8(b) [1994], of the Water Pollution Control Act, provides, in part:

(b) It is unlawful for any person, unless the person holds a permit therefor from the division, which is in full force and effect, to:

(1) Allow sewage, industrial wastes or other wastes, or the effluent therefrom, produced by or emanating from any point source, to flow into the waters of this state ...

(6) Construct, install, modify, open, reopen, operate or abandon any mine, quarry or preparation plant, or dispose of any refuse or industrial wastes or other wastes from any such mine or quarry or preparation plant: Provided, That the division's permit is only required wherever the aforementioned activities cause, may cause or might reasonably be expected to cause a discharge into or pollution of waters of

the state, except that a permit is required for any preparation plant[.]

Moreover, *W. Va.Code,* 22–11–20 [1994], of the Act, provides, in part:

No right to violate the rules of the board or director or to continue existing pollution of any of the waters of the state exists nor may such right be acquired by virtue of past or future pollution by any person. The right and control of the state in and over the quality of all waters of the state are hereby expressly reserved and reaffirmed. It is recognized that with the passage of time, additional efforts may have to be made, by all persons toward control and reduction of the pollution of the waters of the state, irrespective of the fact that such persons may have previously complied with all orders of the director or board.

seq.] or of any rule or who violates any standard or order promulgated or made and entered under the provisions of [the Act]' or when a 'violation occurred or is occurring' under the Act. *W. Va.Code,* 22–11–22 [1994]. Thus, any 'sewage, industrial wastes or other wastes, or the effluent therefrom, produced by or emanating from any point source [and currently] flow[ing] into the waters of this state[,]' *W. Va.Code,* 22–11–8(b)(1) [1994], in violation of any provision of the Water Pollution Control Act constitutes a continuing violation of the Act.

11. When a public nuisance action is brought in order to remediate a business site containing hazardous waste found in the soil and flowing into the waters of this State, the one-year statute of limitations found in *W. Va.Code,* 55–2–12(c) [1959] does not accrue until the harm or endangerment to the public health, safety and the environment is abated.

In *Kermit,* the record indicated that the Division of Environmental Protection, in its 1995 complaint, raised the Water Pollution Control Act for the first time approximately 7 years after the lessee vacated the property. Nevertheless, noting that the complaint alleged that hazardous waste "currently remains" in the soil at the site and that hazardous waste has contaminated a nearby river, this Court concluded, in *Kermit,* that because the Division of Environmental Protection alleged "that a 'violation ... is occurring' under the Water Pollution Control Act, the statute of limitations has not yet begun to run." 200 W. Va. at 240, 488 S.E.2d at 920. Similarly, with regard to the Division of Environmental Protection's public nuisance claim, which consisted of allegations of hazardous waste found at the site and leaching into the nearby river, this Court stated:

As long as the arsenic remains on the Kermit Lumber business site in amounts above the regulatory limits and as long as the arsenic is flowing into the Tug Fork River, the harm or nuisance continues and thus, is a continuing (or temporary) nuisance. It is inconceivable that the arsenic caused all the damage it could prior to

1988 when the [lessee] vacated the business site.

200 W. Va. at 245, 488 S.E.2d at 925.

Here, the sole issue before this Court is whether the circuit court committed error in granting the motion of CSX Corporation to dismiss for lack of personal jurisdiction. Clearly, it is not necessary for the appellants to prove their allegations as to liability before personal jurisdiction over CSX Corporation may be considered. It is noteworthy, however, that although the parties and the circuit court have not had the benefit of the recent *Kermit* decision, CSX Corporation acknowledged that the circuit court's granting of the motion in limine did not "immunize New River, or any CSX Corp. subsidiary, for any acts for which they were responsible."

■ Certainly, to the extent that New River or Western Pocahontas may be responsible for continuing violations of law concerning pollution emanating from the Summerlee site, as the appellants have alleged they are, the actions of CSX Corporation toward those entities after April 1, 1980, are relevant to the question of personal jurisdiction. According to the appellants, after the sale to Lewis Law and Mine Management, Inc., there existed (1) interlocking directorates among CSX Corporation and its affiliated subsidiaries, (2) control, generally, by CSX Corporation over its subsidiaries and (3) the "usurpation of assets" by CSX Corporation of its subsidiaries. *See* n. 4, *supra.* In view of such matters, this Court is of the opinion that the circuit court committed error in excluding the post April 1, 1980, evidence.

■ As indicated above, the circuit court, upon granting the motion in limine, allowed the appellants to vouch the record with their post-April 1, 1980, evidence concerning jurisdiction. That evidence was presented to the circuit court in summary fashion, and CSX Corporation did not have occasion to respond. Consequently, under those circumstances, and in view of the fact that the circuit court did not consider that evidence in ruling upon the motion of CSX Corporation to dismiss, it would be inappropriate for this Court to state whether the appellants met their burden of proving personal jurisdiction

over CSX Corporation. *See Bell Atlantic, supra.* Accordingly, we remand these actions to the circuit court for a more complete consideration, and findings, under the *Norfolk Southern* case, concerning the jurisdictional question. As this Court stated in syllabus point 1 of *P.T.P. v. Board of Education of Jefferson County,* 200 W.Va. 61, 488 S.E.2d 61 (1997): "A circuit court's order granting dismissal should set out factual findings sufficient to permit meaningful appellate review. Findings of fact include facts which the circuit court finds relevant, determinative of the issues, and undisputed."

Upon all of the above, therefore, the final order of the Circuit Court of Fayette County, entered on July 15, 1996, is reversed, and these actions are remanded to that court for proceedings consistent with this opinion.

Reversed and remanded.