**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


**STATE OF WEST VIRGINIA ex rel.**
**JAMES WILLIAM HOWELL, JR.,**
**Petitioner,**

**FILED**
**November 5, 2019**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)     No. 19-0065 (Randolph County Nos. 16-F-104, 16-F-125)**

**THE HONORABLE DAVID H. WILMOTH,**
**JUDGE OF THE CIRCUIT COURT OF RANDOLPH COUNTY,**
**and MICHAEL W. PARKER, RANDOLPH COUNTY**
**PROSECUTING ATTORNEY,**
**Respondents**


**MEMORANDUM DECISION**

Petitioner James William Howell, Jr., by counsel Phillip S. Isner and David C. Fuellhart, petitions this Court to invoke its original jurisdiction pursuant to Rule 16 of the West Virginia Rules of Appellate Procedure. Petitioner seeks a writ of prohibition, or alternatively, a writ of mandamus against respondents, the Honorable David H. Wilmoth, Judge of the Circuit Court of Randolph County, and Michael W. Parker, Randolph County Prosecuting Attorney ("the State")[1], challenging the circuit court's denial of petitioner's motion to dismiss the probation violation proceeding brought against him.

Upon thorough consideration of the petition for writ of prohibition, the State's response, the brief of the Intervenor, the West Virginia Division of Corrections and Rehabilitation ("DCR"),[2] the parties' oral arguments, and the appendix record, we conclude that the circuit court neither lacked jurisdiction nor exceeded its jurisdiction in entering the order at issue and, therefore, extraordinary relief should not issue as the rule to show cause in this matter was improvidently granted. Because we discern no substantial question of law in connection with the petition, a memorandum decision denying the requested writ is the appropriate disposition pursuant to Rule 21 of the West Virginia Rules of Appellate Procedure.

---

[1]The State is represented by Mr. Parker.

[2]The DCR, by counsel Briana J. Marino, was invited by the Court to intervene in this case when the Court issued the rule to show cause. We appreciate the DCR's participation and have considered the position it advanced.

1

## I. Facts

On August 27, 2015, petitioner sold methamphetamine to a confidential informant and was later convicted of delivery of a controlled substance.[3] Thereafter, on March 30, 2016, petitioner was involved in stealing personal property from others, which was valued at $5,100, and was later convicted of conspiracy.[4] On March 20, 2017, petitioner was sentenced in both aforementioned cases as follows:

> The court ORDERED that the Defendant shall be and is hereby sentenced to not less than one (1) nor more than five (5) years on the offense of Delivery of a Controlled Substance . . . . The Court ORDERED that the Defendant shall be and is hereby sentenced to not less than one (1) nor more than (5) years in the state penitentiary for the offense of Conspiracy . . . . The Court ORDERED that said sentences shall run consecutively to each other. *The Court further ORDERED that the execution of the second sentence shall be and is hereby suspended and the Defendant shall be placed on five (5) years of supervised probation with the Randolph County Probation Office upon release from the first sentence. . . .*

(Emphasis added).

Subsequently, on March 9, 2018, petitioner was released from incarceration in the state penitentiary on his first sentence and placed on parole. Petitioner was granted approval to serve his parole in the State of Maryland. Upon his release from his first sentence, petitioner reported to the Randolph County Probation Office and met with his probation officer. At that time, petitioner was advised of the terms and conditions of his supervised probation imposed on his second sentence, all as set forth in a document entitled "Probation Supervision Terms and Regulations" in which petitioner initialed each of the terms and conditions of his supervised probation and signed each page. Petitioner's counsel was provided a copy of the document. The document also indicates that petitioner's term of supervised probation would expire on April 9, 2023. As with petitioner's parole, supervision of petitioner's probation was also transferred to Maryland following this initial meeting.

As set forth in a probation violation report dated September 12, 2018, on June 8, 2018, petitioner's probation officer received an anonymous tip that petitioner was "actively harassing" them, was "observed hanging out with known drug dealers" and "was not permitted in town." The probation officer contacted the State of Maryland and was told that petitioner had been granted permission to return to Randolph County to visit his grandmother, who was terminally ill, and should have returned to Maryland prior to June 8. Then, on June 15, 2018, petitioner's probation officer

---

[3]*See* W. Va. Code § 60A-4-401(a)(ii).

[4]*See* W. Va. Code § 61-10-31.

2

was contacted by local law enforcement and informed that petitioner "was involved in an incident that is under investigation wherein . . . [petitioner] was at his father's home recklessly discharging a firearm." Local law enforcement reported that petitioner fled from sheriff's deputies when they responded to the scene and verbally told petitioner to stop. Again on July 20, 2018, petitioner was involved in a high speed pursuit in Randolph County. Petitioner abandoned the car and fled on foot. After this incident, the sheriff's deputies obtained a warrant for petitioner for fleeing an officer with reckless indifference. On September 7, 2018, petitioner was taken into custody after actively eluding authorities for almost three months. Petitioner told his probation officer that he had been abusing methamphetamine and other drugs while he was avoiding probation supervision.

A preliminary hearing on the alleged supervised probation violations was scheduled for October 15, 2018. At this hearing, petitioner, for the first time, objected to the fact that he was on probation and orally moved to dismiss the probation violation proceeding, arguing that he had not been released from his first sentence and, therefore, his sentence of probation for conspiracy on his second sentence had not yet started. Petitioner then waived his preliminary hearing and the circuit court granted him time to file a motion and fully brief the issue raised. The circuit court set the adjudication hearing for November 26, 2018.

Petitioner filed a "Motion to Dismiss Probation Violation Proceedings" before the November hearing. In his motion, which cited no legal authority, petitioner's counsel argued that his probationary term had not yet begun, because at the time the State sought to revoke his probation, he was still on parole and therefore had not been "released from his first sentence[.]"

At the November 26, 2018, adjudication hearing on petitioner's alleged violations of the terms of his supervised probation, petitioner's counsel argued that petitioner simply could not violate his probation because it had not started. He further maintained that the circuit court was without jurisdiction because his client was not on probation. He asked that the proceeding be dismissed and "the parole board can deal with it in whatever way they see appropriate[.]"[5] The circuit court, by order entered December 12, 2018, denied petitioner's motion to dismiss the probation violation proceeding, finding that "it was the Court's intention to place the Defendant on probation upon his release from incarceration[]" from petitioner's first sentence.[6]

---

[5]According to petitioner in his petition, he also had a parole violation proceeding pending at the time the instant issue was raised before the circuit court. Petitioner indicates that he stipulated to violating his parole and was incarcerated until June of 2019. There is nothing in the record to indicate whether petitioner has been released, although the DCR represented to the Court during oral argument that petitioner was fully discharged from his first sentence on September 12, 2019.

[6]The circuit court stayed the proceedings in order to allow petitioner to file a petition for a writ of prohibition with this Court.

Petitioner filed the instant petition for writ of prohibition seeking to prohibit the circuit court from continuing with the probation violation proceeding because the petitioner had not yet begun his probationary period, or, in the alternative, requiring the circuit court to modify the sentencing order to show that petitioner is actually serving concurrent sentences.

## II. Standard of Review

Petitioner seeks a writ of prohibition to prevent his probation violation proceeding from occurring. It is well-established law that "the right to prohibition must be clearly shown before a petitioner is entitled to this extraordinary remedy." *Norfolk S. Ry. Co. v. Maynard*, 190 W.Va. 113, 120, 437 S.E.2d 277, 284 (1993). Further, "[t]he writ of prohibition will issue only in clear cases, where the inferior tribunal is proceeding without, or in excess of, jurisdiction." Syllabus, *State ex rel. Vineyard v. O'Brien*, 100 W. Va. 163, 130 S.E. 111 (1925); *see* Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977) ("A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code 53-1-1."). We have also set forth the following standard for ascertaining whether to issue a writ of prohibition:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996). With the foregoing factors in mind, we undertake an examination of petitioner's argument.

## III. Discussion

Petitioner's sole basis for seeking extraordinary relief from this Court is his claim that the circuit court had no authority to revoke his probation on the second of two consecutive sentences when he had yet to complete the first sentence of those sentences. He argues, *again with no*

4

*supporting authority*, that he was not released from his first sentence until he either discharged the entirety of the sentence through incarceration or alternatively was released from parole. According to petitioner, because his probationary term, under the circuit court's sentencing order, did not begin until he discharged his first sentence or was released from parole on his first sentence—neither of which had occurred in this case when the State sought to revoke his probation—the circuit court was without the authority to revoke his probation, because he had yet to begin his probation term.

In contrast, respondent argues that the writ should be dismissed because petitioner had other adequate means to pursue relief through a direct appeal. Respondent contends that petitioner's

> argument that his period of probation had yet to begin is thinly[] veiled fiction based upon wording in an order that could have admittedly been clearer. However, the defendant was expressly aware that he was placed on supervised probation and had actual notice of the terms and conditions of that probation. The purported issues with the language of the sentencing order were only raised after the defendant committed multiple violations of the terms of that probation.

Lastly, the intervenor DCR urges the Court to define the terms "release"[7] from custody and "discharge"[8] from custody and advocates that the Court adopt the plain, ordinary meaning of each of those terms.

Applying the *Hoover* factors to the instant case, we are troubled that petitioner fails to meet the first factor, because he certainly has another adequate means to obtain relief—a direct appeal. *Hoover*, 199 W. Va. at 15, 483 S.E.2d at 15, Syl. Pt. 4, in part. While the circuit court stayed its order in this case to allow petitioner the opportunity to pursue extraordinary relief in this Court, we are mindful that petitioner is before this Court on a purely interlocutory order as all that has transpired at this juncture is that petitioner's motion to dismiss the probation violation proceeding has been denied. Petitioner's probation has not been revoked. *See State v. Hamby*, No. 11-0942, 2012 WL 3079152, at *2 (W. Va. April 16, 2012) (memorandum decision)(resolving similar facts and the same issue as presented in the instant case on direct appeal after petitioner's probation was

---

[7]According to the DCR, in a circuit court's sentencing order, "release" would describe "the day, month, and year of the individual's exit from physical incarceration within a prison or jail operated by the State of West Virginia."

[8]The DCR contends that the term "discharge" would be used "to describe the complete extinguishment of the executive branch's jurisdiction over the person in every form—incarceration and parole—by virtue of completion of his/her sentence." Thus, as the DCR maintains, it will "consider an inmate as having 'discharged' his/her sentence when the inmate has served all required periods of incarceration and parole such that he/she is no longer subject to jurisdiction of DCR for the crime(s) committed in the associated order."

revoked).[9] As we have repeatedly stated, "[o]ur law plainly says that a writ of prohibition may not be used as a substitute for appeal." *State ex rel. Shelton v. Burnside*, 212 W. Va. 514, 518, 575 S.E.2d 124, 128 (2002); *see also State ex rel. Maynard v. Bronson*, 167 W. Va. 35, 41, 277 S.E.2d 718, 722 (1981) ("[P]rohibition cannot be substituted for a writ of error or appeal unless a writ of error or appeal would be an inadequate remedy.").

We also focus on the third *Hoover* factor—"whether the lower tribunal's order is clearly erroneous as a matter of law[.]" 199 W. Va. at 15, 483 S.E.2d at 15, Syl. Pt. 4, in part. It is this factor that we have said should be given "substantial weight" in reaching the decision on whether to issue a writ of prohibition. *Id.* Succinctly stated, it is the absence of any authority showing that the circuit court's order was "clearly erroneous as a matter of law" that is also fatal to petitioner's case. As petitioner offers no law to show that the circuit court's order was erroneous, we are left with a sentencing order that was lawful, was carried out as intended, and was understood by petitioner, who reported to his probation officer immediately upon his release from incarceration and signed and initialed every term in the "Probation Supervision Terms and Regulations" document. It was only after he violated the terms of his supervised probation and was searching for a means of avoiding the consequences that he raised the novel argument that his supervised probation had never begun.

Because petitioner provides us with no legal basis to find any error committed by the circuit court in its decision and because petitioner has other adequate means of relief, the Court finds that the rule to show cause was improvidently granted. *See State ex rel. W. Va. Secondary Sch. Activity Comm'n v. Hrko*, 213 W.Va. 219, 579 S.E.2d 560 (2003)(finding that rule to show cause was improvidently granted and denying writ); *see also State ex rel. Vanderra Res., LLC v. Hummel*, 242 W. Va. 35, 829 S.E.2d 35 (2019) (determining that rule to show cause was improvidently granted and denying requests writs); *State ex rel. Nationwide Mut. Ins. Co. v. Marks*, 223 W. Va. 452, 676 S.E.2d 156 (2009) (denying writ after finding rule to show cause was improvidently granted). The writ of prohibition is, therefore, denied.

## IV.  Conclusion

Based upon the foregoing, the petitioner's writ of prohibition is denied.

Writ denied.

---

[9]Specifically, in *Hamby*, we rejected the argument that the circuit court lacked jurisdiction over petitioner for purposes of hearing the probation revocation proceeding, which resulted in petitioner's probation being revoked, and determined that there was nothing in the circuit court's sentencing order "or our prior holdings [that] requires . . . petitioner [to] be fully discharged from the sentence in order to begin serving her probation." No.11-0942, 2012 WL 3079152, at *2.

6

ISSUED: November 5, 2019

**CONCURRED IN BY:**
Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evans H. Jenkins
Justice John A. Hutchison