# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## September 2018 Term

_____

No. 17-0466
_____

**FILED**

**November 9, 2018**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA,**
**Plaintiff Below, Respondent,**

**V.**

**TRACY A. BACK,**
**Defendant Below, Petitioner.**

_____

**Appeal from the Circuit Court of Pocahontas County**
**Honorable Jennifer P. Dent, Judge**
**Criminal Action No. 16-F-33(D)**
**AFFIRMED**

_____

**Submitted:  October 24, 2018**
**Filed: November 9, 2018**

E. Lavoyd Morgan, Jr.
E. Lavoyd Morgan, Jr. & Assocs., LC
Lewisburg, West Virginia
Attorney for the Petitioner

Patrick Morrisey
Attorney General
Robert L. Hogan
Deputy Attorney General
Zachary Viglianco
Assistant Attorney General
Charleston, West Virginia
Attorneys for the Respondent

**JUSTICE JENKINS delivered the Opinion of the Court.**

**JUSTICE ALLEN H. LOUGHRY II, suspended and therefore not participating.**

**JUSTICE PAUL T. FARRELL, sitting by temporary assignment.**

**SYLLABUS BY THE COURT**

1. "Once the defendant establishes a *prima facie* case of willful, intentional fraud in obtaining an indictment[,] he is entitled to a hearing with compulsory process." Syllabus point 3, in part, *State ex rel. Pinson v. Maynard*, 181 W. Va. 662, 383 S.E.2d 844 (1989).

2. "Except for willful, intentional fraud[,] the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency." Syllabus, *Barker v. Fox*, 160 W. Va. 749, 238 S.E.2d 235 (1977).

3. Pursuant to W. Va. Code § 61-6-24(b) (LexisNexis 2014), it is unlawful to knowingly and willfully *threaten to commit* a terrorist act, with or without the intent to commit the act. Thus, in order to violate W. Va. Code § 61-6-24(b), the threat itself need not meet the definition of a "terrorist act" as set out in W. Va. Code § 61-6-24(a)(3), but *the specific act* that is threatened must meet that definition.

**Jenkins, Justice:**

Tracy Back ("Mr. Back") herein appeals from the April 20, 2017, order of the Circuit Court of Pocahontas County sentencing him to a term of incarceration of one to three years for his conviction of one felony count of threatening to commit a terrorist act in violation of W. Va. Code § 61-6-24(b) (LexisNexis 2014). Although Mr. Back raises four assignments of error, this case is resolved by addressing only two issues.[1] First, Mr. Back claims that the circuit court erred by failing to dismiss the indictment against him based upon misleading evidence submitted to the grand jury. Mr. Back next claims that the evidence supporting his conviction was insufficient. Having considered the briefs submitted on appeal, the appendix record, the parties' oral arguments, and the applicable legal authority, we find no error. Accordingly, we affirm the circuit court.

## I.

### FACTUAL AND PROCEDURAL HISTORY

In February 2016, Mr. Back's mother ("Mrs. Back") reported to law enforcement officials that Mr. Back had been communicating to her various threats to kill members of his and his ex-wife's family, and also his desire to kill people as a way of gaining attention because he was not known in West Virginia. Mr. Back was subsequently arrested. He was indicted by a Pocahontas County Grand Jury on August 2, 2016. The single count indictment found that:

---

[1]See note 4, *infra*, for a discussion of why we need only address two of the issues raised by Mr. Back.

1

> [F]rom on or about the ___ day of November, 2015[,] to the ___ day of February, 2016, in Pocahontas County, West Virginia, TRACY ALLEN BACK did knowingly, willfully, and feloniously threaten to commit a terrorist act, with or without the intent to commit the act, to wit: TRACY ALLEN BACK did threaten to kill several of his family members and stated he would like to become like one of those individuals who kill a bunch of people to get attention because he doesn't know anyone in West Virginia, and no one knows him. Such act is likely to result in serious bodily injury and is intended to intimidate or coerce the civilian population. Such act was against the peace and dignity of the State of West Virginia. West Virginia Code, Chapter 61, Article 6, Section 24(b), as amended.

A single witness had testified before the grand jury, a chief deputy of the Pocahontas County Sheriff's Department who investigated Mrs. Back's report.

Mr. Back filed a motion to dismiss the indictment in which he asserted four grounds for dismissal. Specifically, he argued that: (1) his alleged conduct did not violate W. Va. Code § 61-6-24(b); (2) the chief deputy provided information to the grand jury that had not been disclosed to the defense, that was not supported by documentary proof, and that was presented in an effort to depict Mr. Back as a dangerous man; (3) the prosecutor elicited testimony from the chief deputy that expressed the officer's *opinion* as to Mr. Back's intentions related to the elements of the alleged offense; and (4) the chief deputy improperly referenced Mr. Back's exercise of his Fifth Amendment right to refuse to answer questions and Mr. Back's incarceration. Mr. Back's motion was denied by the circuit court based upon the fact that none of the errors he asserted were alleged to have

2

been the result of any "willful, intentional fraud" as required by Syllabus point 2 of *State ex rel. Pinson v. Maynard*, 181 W. Va. 662, 383 S.E.2d 844 (1989).

Mr. Back was then tried before a jury. The State presented two witnesses, the chief deputy and Mrs. Back. At the close of the State's evidence, Mr. Back moved for a judgment of acquittal, which motion was denied by the circuit court. The defense declined to present evidence, and the case was submitted to the jury. After a period of deliberation, the jury announced that it was unable to reach a unanimous decision. As a result, the jury was given an *Allen* charge.[2] Following additional deliberations, the jury returned a verdict finding Mr. Back guilty of one count of threatening to commit a terrorist act. Mr. Back then filed post-trial motions seeking judgment of acquittal or, in the alternative, a new trial. After conducting a hearing on the same, the circuit court denied both motions. Thereafter, Mr. Back was sentenced to an indeterminate term of incarceration of one to three years.[3] This appeal followed.

---

[2]This Court has explained that "[a]n *Allen* charge is a 'supplemental instruction given to encourage deadlocked juries to reach an agreement.' F. Cleckley, 2 *Handbook on West Virginia Criminal Procedure*, at 257 (1993)." *State v. Shabazz*, 206 W. Va. 555, 559, 526 S.E.2d 521, 525 (1999). *Accord* 2 Trisha Zeller, *Handbook on West Virginia Criminal Procedure*, § XIX-A[6], at 19-20 (3d ed. 2018). "The name for this particular instruction originated from the case of *Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 528 (1896)." *State v. Waldron*, 218 W. Va. 450, 459 n.11, 624 S.E.2d 887, 896 n.11 (2005) (per curiam).

[3]Mr. Back's projected release date was September 5, 2017.

3

## II.

## STANDARD OF REVIEW

Each of the issues herein raised is addressed by this Court under a different standard of review. Accordingly, the proper standard for our review is set out in connection with the issue to which it relates.

## III.

## DISCUSSION

Although Mr. Back asserts four separate assignments of error, only two distinct issues are thereby raised.[4] Thus, we first address Mr. Back's challenge of the

---

[4]We address Mr. Back's first assignment of error challenging the circuit court's ruling denying his motion to dismiss the indictment returned against him. Mr. Back's second assignment of error asserts that the circuit court erred in denying his motion for judgment of acquittal, challenging the sufficiency of the evidence, *made at the close of the State's case-in-chief*. In his appellate brief, Mr. Back fails to cite to a single authority on this issue. Accordingly, we decline to address this inadequately briefed issue. *See State v. White*, 228 W.Va. 530, 541 n.9, 722 S.E.2d 566, 577 n.9 (2011) ("Typically, this Court will not address issues that have not been properly briefed."); *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are . . . mentioned only in passing but are not supported with pertinent authority, are not considered on appeal."). *See also* W. Va. R. App. P. Rule 10(c)(7) ("The brief *must contain* an argument exhibiting clearly the points of fact *and law* presented, *the standard of review applicable*, and *citing the authorities relied on . . . .*" (emphasis added)).

Mr. Back's assignments of error three and four assert the same issue, the sufficiency of the evidence to support his conviction. In assignment of error three, Mr. Back asserts that "[t]he Trial Court erred in denying the Petitioner's post trial motions for Judgment of Acquittal and New Trial based on grounds of insufficiency of evidence." In assignment of error four, Mr. Back asserts that "[t]he Respondent State of West Virginia failed to present evidence at trial sufficient to overcome the Petitioner's Constitutional presumption of innocence, and failed to present evidence from which a jury could find

circuit court's ruling denying his motion to dismiss the indictment returned against him. We then will address his challenge of the sufficiency of the evidence presented at trial.

### *A. Indictment*

Mr. Back first contends that the circuit court erred by denying his motion to dismiss the indictment as having been based upon misleading testimony, insufficient evidence, and a misapplication of W. Va. Code § 61-6-24. Notably, Mr. Back's brief expressly states that he "does not allege willful, intentional fraud on the part of the Respondent [the State of West Virginia]." Rather, Mr. Back claims that "misleading testimony on the part of the Respondent, through inattention and negligence, was presented to the grand jury[.]" Mr. Back asserts that this Court's holding in Syllabus point 5 of *Pinson*, 181 W. Va. 662, 383 S.E.2d 844, grants a trial court the discretion to review the transcript of a grand jury proceeding for legality and sufficiency under circumstances such as those presented in the instant case.

The State responds that the circuit court properly denied Mr. Back's motion to dismiss the indictment without conducting an in camera review of the grand jury transcript. According to the State, Mr. Back has misinterpreted the holding in Syllabus point 5 of *Pinson*. The State explains that Mr. Back argues for the application of the

guilt beyond a reasonable doubt as to all of the elements of the offense charged." Because both of these assignments ask this Court to review the sufficiency of the evidence to support Mr. Back's conviction, we will consolidate them into one discussion.

5

standard announced in Syllabus point 5 of *Pinson* without regard for the threshold finding of "willful, intentional fraud" that is required by Syllabus point 2 of *Pinson*.

At the outset, we observe that "[o]ur standard of review of a motion to dismiss an indictment is generally *de novo*." *State v. Davis*, 205 W. Va. 569, 578, 519 S.E.2d 852, 861 (1999).[5] Applying this standard, we proceed to address the propriety of the circuit court's ruling denying Mr. Back's motion to dismiss the indictment.

With respect to a circuit court's consideration of a motion to dismiss an indictment, this Court has held that, "[o]nce the defendant establishes a *prima facie* case of willful, intentional fraud in obtaining an indictment[,] he is entitled to a hearing with compulsory process." Syl. pt. 3, in part, *Pinson*, 181 W. Va. 662, 383 S.E.2d 844 (citing *Barker v. Fox*, 160 W.Va. 749, 238 S.E.2d 235 (1977)). This Court has clarified, however, that "[e]xcept for willful, intentional fraud[,] the law of this State does not

---

[5]The *Davis* Court went on to acknowledge that,

> in addition to the *de novo* standard of review, where an evidentiary hearing is conducted upon a motion to dismiss[,] this Court's "clearly erroneous" standard of review is ordinarily invoked concerning a circuit court's findings of fact. *See generally*, *Town of Fayetteville v. Law*, 201 W. Va. 205, 495 S.E.2d 843 (1997); *McCormick v. Allstate Insurance Company*, 197 W. Va. 415, 475 S.E.2d 507 (1996).

*State v. Davis*, 205 W. Va. 569, 578, 519 S.E.2d 852, 861 (1999). It does not appear that the circuit court conducted an evidentiary hearing before ruling on Mr. Back's motion. Moreover, the grounds relied upon by the circuit court in denying Mr. Back's motion did not require findings of fact, and the circuit court made none. Accordingly, we do not apply the clearly erroneous portion of the standard of review.

6

permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency." Syl., *Barker v. Fox*, 160 W. Va. 749, 238 S.E.2d 235 (1977). *Accord* Syl. pt. 2, *Pinson*, 181 W. Va. 662, 383 S.E.2d 844.

Although Mr. Back has expressly stated that he "does not allege willful, intentional fraud on the part of the Respondent [the State of West Virginia]," he nevertheless contends that the circuit court had discretion to review the transcript of the grand jury proceedings pursuant to Syllabus point 5 of *Pinson*. This holding provides:

> When perjured or misleading testimony presented to a grand jury is discovered before trial and there is no evidence of prosecutorial misconduct, the State may withdraw the indictment without prejudice, or request the court to hold an *in camera* hearing to inspect the grand jury transcripts and determine if other sufficient evidence exists to support the indictment.

*Id*. Mr. Back fails to recognize, however, that *Pinson* did not eliminate the requirement for a *prima facia* showing of willful, intentional fraud before a circuit court may "go behind an indictment to inquire into the evidence considered by the grand jury[.]" Syl., *Barker v. Fox*, 160 W. Va. 749, 238 S.E.2d 235. Indeed, prior to reaching its discussion that resulted in the holding announced in Syllabus point 5, the *Pinson* Court explained that

> the record before us is incomplete; various proceedings, including the dismissal hearing, are not in the record. Furthermore, the state does not object to the dismissal but merely the dismissal *with prejudice*. Therefore, for the sake of this discussion, *we will assume the circuit court was*

7

*correct in its finding of a prima facie case of willful, intentional fraud*.

181 W. Va. at 666, 383 S.E.2d at 848 (some emphasis added). Obviously, then, it was incumbent upon Mr. Back to make a *prima facie* showing of willful, intentional fraud. Without such a showing, the circuit court simply could not inquire into the evidence presented to the grand jury. Because Mr. Back failed to make a *prima facie* showing of willful, intentional fraud, the circuit court did not err in denying his motion to dismiss the indictment.

### B. Sufficiency of the Evidence

Mr. Back additionally argues that the circuit court erred in finding that the evidence presented against him was sufficient to support his conviction for violating W. Va. Code § 61-6-24.[6] The State responds that a review of the record reveals that it presented sufficient evidence as to each of the elements of the statute prohibiting threats of terrorist acts.

It is well established that

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after

---

[6]Mr. Back raised this issue in two separate assignments of error. See *supra* note 4 for an explanation of why we consolidate the issues into one discussion.

viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). *See also* Syl. pt. 2, *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996) ("When a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict. This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt."). Furthermore,

[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl. pt. 3, *Guthrie*, 194 W. Va. 657, 461 S.E.2d 163. Insofar as our analysis of this issue requires us to consider relevant statutory language, our review is plenary. *See* Syl. pt. 1,

9

*Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). With these standards in mind, we proceed to our analysis of W. Va. Code § 61-6-24 and our consideration of whether the evidence against Mr. Back was sufficient to support his conviction thereof.

Mr. Back contends that the evidence presented at trial was insufficient to establish that he violated W. Va. Code § 61-6-24(b) because no evidence was presented from which a jury could find guilt beyond a reasonable doubt that *his threat* was likely to result in serious bodily injury or damage to property or the environment. Mr. Back bases this assertion on the fact that he "had no weapons or apparent ability to carry out any threat he may have made." Mr. Back additionally asserts that there was insufficient evidence that the "act threatened was intended to intimidate or coerce the civilian population" because such conduct must be aimed at the civilian population as a whole. *Citing State v. Yocum*, 233 W. Va. 439, 447, 759 S.E.2d 182, 190 (2014). Finally, and without citing any authority, he argues that his statements could not be considered a threat to commit terrorist acts because they were never communicated to the person or persons being threatened with the acts.

Although there are multiple ways of violating W. Va. Code § 61-6-24(b), Mr. Back was specifically convicted of threatening a terrorist act that was "[l]ikely to

10

result in serious bodily injury or damage to property or the environment," and intended to "[i]ntimidate or coerce the civilian population." W. Va. Code §§ 61-6-24(a)(3)(A) & (B)(i). West Virginia Code § 61-6-24(b) provides:

> Any person who knowingly and willfully threatens to commit a terrorist act, with or without the intent to commit the act, is guilty of a felony and, upon conviction thereof, shall be fined not less than $5,000 nor more than $25,000 or confined in a state correctional facility for not less than one year nor more than three years, or both.

The term "terrorist act" is defined as follows:

> "Terrorist act" means an act that is:
> (A) Likely to result in serious bodily injury or damage to property or the environment; *and*
> (B) Intended to:
> (i) *Intimidate or coerce the civilian population*;
> (ii) Influence the policy of a branch or level of government by intimidation or coercion;
> (iii) Affect the conduct of a branch or level of government by intimidation or coercion; or
> (iv) Retaliate against a branch or level of government for a policy or conduct of the government.

W. Va. Code § 61-6-24(a)(3) (emphasis added).

In examining the foregoing statutory provisions, we are mindful that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). In determining the intent of the Legislature, we "look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v.*

*State Tax Dep't*, 195 W. Va. 573, 587, 466 S.E.2d 424, 438 (1995). On the other hand, "[a] statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992).

This Court first had occasion to consider W. Va. Code § 61-6-24 in *State v. Yocum*, 233 W. Va. 439, 759 S.E.2d 182, wherein we observed that, "[a]s was the case with many other states, our anti-terrorism statute, West Virginia Code § 61-6-24, was enacted in direct response to the events of September 11, 2001." *Yocum*, 233 W. Va. at 445, 759 S.E.2d at 188 (footnote omitted). We further recognized the dual intention of W. Va. Code § 61-6-24, *i.e.*, "to thwart and/or punish future instances of qualifying acts of terrorism." *Yocum*, 233 W. Va. at 445, 759 S.E.2d at 188. Thus, it is from this perspective that we consider Mr. Back's arguments relating to the sufficiency of the evidence.

Mr. Back's first argument is that no evidence was presented that *his threat* was likely to result in serious bodily injury or damage to property or the environment. He bases this contention on the fact that he "had no weapons or apparent ability to carry out any threat he may have made." Mr. Back's argument misinterprets W. Va. Code § 61-6-24(b).

In plain language, W. Va. Code § 61-6-24(b) prohibits knowingly and willfully *making a threat* to commit a terrorist act, regardless of whether there is any intent to actually commit the same. The accompanying definition of the term "terrorist

12

act," set out in W. Va. Code § 61-6-24(a)(3), describes the characteristics of *the act* that must be threatened in order to violate W. Va. Code § 61-6-24(b).  In other words, *the threat itself* need not meet the definition of a "terrorist act," but the *act threatened* must meet that definition, whether or not there was an associated intent to actually carry out the threatened deed.  Accordingly, we now expressly hold that, pursuant to W. Va. Code § 61-6-24(b), it is unlawful to knowingly and willfully *threaten to commit* a terrorist act, with or without the intent to commit the act.  Thus, in order to violate W. Va. Code § 61-6-24(b), the threat itself need not meet the definition of a "terrorist act" as set out in W. Va. Code § 61-6-24(a)(3), but *the specific act* that is threatened must meet that definition.

Applying this holding to the case at bar, it is evident that, contrary to Mr. Back's assertion, the State was not required to present evidence that Mr. Back's *threat* was "[l]ikely to result in serious bodily injury or damage to property or the environment." W. Va. Code § 61-6-24(a)(3)(A).  Rather, the *specific act* he threatened to undertake, *i.e.,* to become an active shooter[7] in order to gain attention, must meet the definition of a terrorist act.  We look to the evidence presented at trial to see if, when viewed in the light

---

[7]According to the United States Department of Homeland Security, "[a]n Active Shooter is an individual actively engaged in killing or attempting to kill people in a confined and populated area; in most cases, active shooters use firearms(s) and there is no pattern or method to their selection of victims." *Active Shooter How To Respond* (October 2008).  https://www.dhs.gov/xlibrary/assets/active_shooter_booklet.pdf (last visited October 31, 2018).

13

most favorable to the prosecution, the evidence was sufficient to establish that Mr. Back threatened such an act.

The State presented the testimony of the chief deputy who investigated the complaint made by Mrs. Back against her son. The chief deputy testified, without objection, to the results of his investigation:

> I discovered that Mr. Back had made threatening statements, that he was homicidal and suicidal, and that he wanted to be the first active shooter from the State of West Virginia; he wanted to become famous for being an active shooter from this state; and that he intended to commit acts that would make him the first person to do that from this area.

Mrs. Back also testified at trial. She stated that her son, Mr. Back, had threatened to go to Maryland for the purpose of killing his children, his siblings, his ex-wife, and her sister. In addition, she testified that whenever he saw a story on the news about people being killed, he would say he was going to do the same thing. Specifically, she stated "[e]very time something came on, he would say that's what I'm going to do. . . . He was going to kill people. He said that was the only way to get attention." In one portion of her testimony, she explained that "[w]hen he would see people going around killing people, some of the things that happened when he saw kids killed and things like that, he said he wanted to do that one of these days because he wasn't known in West Virginia, and he would get attention that way." Mrs. Back also testified that her son liked to watch movies about terrorists, war movies, and anything with shooting in it; he would say he was going to do the same thing he saw in those movies.

14

Considering this evidence in the light most favorable to the prosecution, we find there was sufficient evidence from which a rational trier of fact could have found that the act threatened by Mr. Back was "[l]ikely to result in serious bodily injury or damage to property or the environment." W. Va. Code § 61-6-24(a)(3)(A). According to the testimony above, Mr. Back desired to kill certain members of his family as well as his ex-wife and her sister. He further expressed his desire to become an active shooter,[8] and to kill people in the manner that he had observed in news stories and violent movies about terrorists. Without question, such killings would be "[l]ikely to result in serious bodily injury" as required by W. Va. Code § 61-6-24(a)(3)(A). Mr. Back's assertion that there was no evidence presented that he possessed any weapons or an ability to actually carry out the threat is without merit. The ability to carry out a threat simply is not an element of the crime of threatening to commit a terrorist act. The plain language of W. Va. Code § 61-6-24(b) criminalizes threatening a terrorist act, as therein described, "*with or without the intent to commit the act*." It is axiomatic that, because there is no need to establish an actual intent to commit the threatened act under the express terms of W. Va. Code § 61-6-24(b), there likewise is no requirement that a defendant possess the means by which to carry out the threatened activity.

---

[8]See *supra* note 7 for a definition of the term "active shooter."

15

To establish a violation of W. Va. Code § 61-6-24(b), the State also was required to show that the act threatened by Mr. Back was "[i]ntended to intimidate or coerce the civilian population." W. Va. Code § 61-6-24(a)(3)(B)(i). Relying on *dicta* from *Yocum*, Mr. Back contends that the State was required, and failed, to present evidence demonstrating that he intended to intimidate or coerce the civilian population *as a whole*.

The comment from the *Yocum* Court upon which Mr. Back relies merely clarified that, in enacting W. Va. Code § 61-6-24, "the Legislature was contemplating threats of terrorist activity aimed *not at individuals . . .* , but instead at the institutional level." *Yocum*, 233 W. Va. at 447, 759 S.E.2d at 190 (emphasis added).[9] Subsequently,

---

[9]In this regard, the *Yocum* Court explained:

[W]e consider what the Legislature intended when it created an offense for threatening action against a branch or level of government by means of intimidation or coercion. *See* W. Va. Code § 61-6-24(a)(3)(B)(iii). Consistent with our statutory obligation to give effect to each word of a statute and to construe it in accord with the import of its language, we cannot gloss over the fact that the terms "level" and "branch" suggest that the Legislature was contemplating threats of terrorist activity *aimed not at individuals* such as Sergeant A. in this case, *but instead at the institutional level.* It is noteworthy that *not one of the four delineations of the intent necessary to come within the definition of a "terrorist act" is framed in terms of causing harm to an individual. See* W. Va. Code § 61-6-24(a)(3)(B)(i) - (iv). The first definition of the requisite intent necessary to commit a statutorily-defined "terrorist act" involves conduct aimed at the civilian population as a whole and the remaining three all require

16

this Court, in *State v. Knotts*, expressed a hesitation to specifically define the term "civilian population," and discussed two jurisdictions that had declined to give a specific definition to the term. 233 W. Va. 665, 670-71, 760 S.E.2d 479, 484-85 (2014) (citing *People v. Morales*, 20 N.Y.3d 240, 982 N.E.2d 580 (2012), and *State v. Laber*, No. 12CA24, 2013 WL 3283218 (Ohio Ct. App. June 11, 2013)). The *Knotts* Court observed that,

> "[i]f we were to apply a broad definition to 'intent to intimidate or coerce a civilian population,' the People could invoke the specter of 'terrorism' every time a Blood assaults a Crip or an organized crime family orchestrates the murder of a rival syndicate's soldier. But the concept of terrorism has a unique meaning and its implications risk being trivialized if the terminology is applied loosely in situations that do not match our collective understanding of what constitutes a terrorist act. *History and experience have shown that it is impossible for us to anticipate every conceivable manner in which evil schemes can threaten our society. Because the legislature was aware of the difficulty in defining or categorizing specific acts of terrorism, it incorporated a general definition of the crime . . . .*"

*State v. Knotts*, 233 W. Va. at 670, 760 S.E.2d at 484 (quoting *People v. Morales*, 20 N.Y.3d at 249, 982 N.E.2d at 586). Ultimately, the *Knotts* Court, addressing a sufficiency of the evidence challenge, similarly found it was

> unnecessary to precisely define what constitutes a "civilian population" within the confines of West Virginia Code § 61-6-24. Instead, this matter is before the Court based upon the

---

> conduct that is directed at a branch or level of government as a whole. *See id*.

> *State v. Yocum*, 233 W. Va. 439, 447, 759 S.E.2d 182, 190 (2014) (emphasis added) (footnote omitted).

17

sufficiency of the evidence. In resolving this challenge, under the statute, the State had the burden of proving [in relevant part] that the Petitioner . . . "[i]ntended to . . . [i]ntimidate or coerce the civilian population . . . " *Id.*

The evidence showed that the Petitioner threatened to use explosive devices on cars belonging to employees of the credit union[.] . . . [E]ven though the threat was made to a credit union employee, by the express words used by the Petitioner it was "intended to intimidate or coerce the civilian population" as the Petitioner threatened "to let the world know how he felt about the credit union," by not only using explosive devices, but also by "let[ting] everybody see what he was going to do, because he was going to put DVD's across our property to let everybody watch." . . . When the Petitioner threatened to use explosive devices in a parking lot located within a municipality, he intended his actions to "[i]ntimidate or coerce" more than just the employees of the credit union. . . . The Petitioner was unequivocal in his desire to seek retribution for what he viewed was the credit union's violation of his First Amendment right to freely speak about circumcision. This type of threat to use explosives in a city in this manner is precisely the type of conduct that anti-terrorism statutes were designed to target. *See Yocum*, 233 W. Va. at 446, 759 S.E.2d at 189 (quoting *Morales*, 958 N.Y.S.2d 660, 982 N.E.2d at 585 (footnote omitted)) ("The federal antiterrorism statutes were designed to criminalize acts such as 'the detonation of bombs in a metropolitan area' or 'the deliberate assassination of persons to strike fear into others to deter them from exercising their rights' . . ."). Accordingly, we affirm the circuit court's determination that sufficient evidence existed to support a conviction.

233 W. Va. at 671-72, 760 S.E.2d at 485-86.

The evidence presented in the instant case is similarly sufficient to support the jury's conclusion that Mr. Back threatened an act that was intended to intimidate or coerce the civilian population. He threatened to execute an "active shooter" scenario,

18

such as those he saw on the news and in terrorist themed movies. The term "active shooter" tends to invoke images of a mass shooting.[10] Indeed, Mr. Back expressed his threat in the plural form by stating his desire to "kill people." Moreover, his expressed purpose for killing people was to gain notoriety. In other words, Mr. Back threatened to stage a shooting likely to kill a sufficient number of people to warrant media attention and thereby intimidate and coerce the general civilian population into giving him the attention he desired. We would be hard pressed to conclude that such a threat does not fall within the type of conduct the Legislature desired to avert when it enacted W. Va. Code § 61-6-24(b). *See State v. Yocum*, 233 W. Va. at 445, 759 S.E.2d at 188 (recognizing "the dual aim of our anti-terrorism statute: to thwart and/or punish future instances of qualifying acts of terrorism").

Finally, we summarily reject Mr. Back's unsupported argument that his threats should not be considered threats to commit a terrorist act because they were never communicated to the persons being threatened. There is nothing in W. Va. Code § 61-6-24(b) requiring that a terrorist threat be expressed to the subject of the threat.

Based upon the forgoing analysis, we conclude that the evidence was sufficient to support Mr. Back's conviction for violating W. Va. Code § 61-6-24(b).

---

[10]See *supra* note 7 for a definition of the term "active shooter."

Accordingly, we find that the circuit court did not err in denying Mr. Back's post-trial motions seeking a judgment of acquittal or, in the alternative, a new trial.

## IV.

## CONCLUSION

For the reasons explained in the body of this opinion, we affirm the April 20, 2017, order of the Circuit Court of Pocahontas County sentencing Mr. Back to a term of incarceration of one to three years for his conviction of one felony count of threatening to commit a terrorist act in violation of W. Va. Code § 61-6-24(b).

Affirmed.