IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2024 Term

_____

No. 22-0503

_____

FILED
April 25, 2024
released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

T & C CONSTRUCTION SERVICES, LLC, a
West Virginia Corporation, and
THEODORE MILLER
Defendants Below, Petitioners

v.

CITY OF ST. ALBANS,
Plaintiff Below, Respondent

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Maryclaire Akers, Judge
Case No. 22-C-189

AFFIRMED, IN PART; REVERSED, IN PART, AND REMANDED

_____

Submitted: February 7, 2024
Filed: April 25, 2024

Shawn D. Bayliss, Esq.
Bayliss Law Offices
Hurricane, West Virginia
Counsel for Petitioner

Timothy J. LaFon, Esq.
Ciccarello, Del Guidice & LaFon
Charleston, West Virginia
Counsel for Respondent

JUSTICE WALKER delivered the Opinion of the Court

1.     "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation."  Syllabus Point 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968).

2.     "Unless an absolute right to injunctive relief is conferred by statute, the power to grant or refuse or to modify, continue, or dissolve a temporary or a permanent injunction, whether preventive or mandatory in character, ordinarily rests in the sound discretion of the trial court, according to the facts and the circumstances of the particular case; and its action in the exercise of its discretion will not be disturbed on appeal in the absence of a clear showing of an abuse of such discretion."  Syllabus Point 11, *Stuart v. Lake Washington Realty*, 141 W. Va. 627, 92 S.E.2d 891 (1956).

3.     "The granting or refusal of an injunction, whether mandatory or preventive, calls for the exercise of sound judicial discretion, in view of all the circumstances of the particular case; regard being had to the nature of the controversy, the object for which the injunction is being sought, and the comparative hardship or convenience to the respective parties involved in the award or denial of the writ."  Syllabus Point 4, *State v. Baker*, 112 W. Va. 263, 164 S.E. 154 (1932).

4.     The process for the execution of a judgment for a fine rendered by a municipal court, under West Virginia Code § 8-11-1(e) (2023) and West Virginia Code § 62-4-11 (2020), is execution by fieri facias—issued either automatically by the clerk immediately after the term at which such judgment was rendered, or prior to that time by special order of the court.

WALKER, Justice:

After a municipal court issued citations to Petitioners T & C Construction Services and Theodore Miller for numerous fire and building code violations, Respondent City of St. Albans sought enforcement in the Circuit Court of Kanawha County. The circuit court issued a cease-and-desist order that enjoined T & C from operating its rental business on the subject premises, granted the City a money judgment for the criminal fines, and appointed a special commissioner to sell the property and satisfy the judgment. Although T & C did not appeal the underlying municipal court order, it now challenges the enforcement order here.

Because we find that the court had jurisdiction to grant injunctive relief, and did not abuse its discretion in so doing, we reject T & C's challenges to the injunctive relief. But because the issuance and return of a writ of fieri facias showing "no property found" is a precondition to a circuit court's jurisdiction to order the sale of a debtor's property to satisfy a judgment for a criminal fine, we reverse the lower court's appointment of a special commissioner to sell the property, and remand for proceedings consistent with this opinion.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

T & C Construction Services and Theodore Miller (collectively, T & C) operate a rental building located in St. Albans, West Virginia.[1] The City of St. Albans first inspected the premises after a tenant contacted the Fire Marshal to inform him about a fire. Inspection revealed a number of fire hazards including exposed wires, exposed electric panels, storage of combustible materials under the stairs, no fire extinguishers, combustible fuel sources and combustible carpet directly in front of the heating source, inadequate alarm systems, a portable space heater built into the steps, abandoned wiring, permanent use of extension cords throughout, and combustible fuel engine equipment in the building.

In addition to the fire hazards, a property maintenance inspection discovered a number of building code violations. The premises was zoned for hotel and motel use but was being used as residential rental property. The balcony was falling off the building and was unable to handle required loads. And, there were plumbing hazards, an accumulation of rubbish, electrical hazards, and storage trailers in front of the building. As a result of the building's numerous code violations, the City issued two citations—one pertained to the City's fire code and the other to the building code. On August 24, 2021, the St. Albans

---

[1] Mr. Miller's relation to the rental property is not clear from the parties' briefs, however, from the supplemental appendix record, we glean that Mr. Miller *owns* T & C Construction Services.

Municipal Court issued an order fining T & C $81,250.00 for the fire code violations and $116,900.00 for the building code violations.[2]

After T & C's time to appeal the sentencing orders had passed,[3] the City filed a complaint for injunctive relief seeking a cease-and-desist order for occupancy of the premises and enforcement of the fines issued as a result of building and fire prevention code violations in the Circuit Court of Kanawha County. The City also sought appointment of a special commissioner to sell the building to collect a judgment on the fines. In its answer, T & C alleged that injunctive relief would be improper since it "would result in greater harm to the State of West Virginia and to the public in general because the requested relief seeks to evict innocent tenants, which is clearly contrary to both law and public policy." T & C also asserted that the rental building "is a lawful business … operating

---

[2] Under Article 1505.99 of the City's fire prevention code, "whoever violates any provision of the Fire Prevention Code or fails to comply therewith[] … shall severally for each such violation and noncompliance respectively, be fined not more than five hundred dollars ($500.00) or imprisoned not more than thirty days or both." And "[e]ach day that prohibited conditions are maintained shall constitute a separate offense." As for building code violations, fines are similarly calculated at $500 for each working day.

[3] Subsection (d) of West Virginia Code § 8-34-1 provides the following: "Any person convicted of an offense by a mayor or municipal court judge may appeal such conviction to circuit court as a matter of right by requesting such appeal within twenty days after the sentencing for such conviction." And "[i]f no appeal is perfected within such twenty-day period, the circuit court may, not later than ninety days after the sentencing, grant an appeal upon a showing of good cause why such an appeal was not filed within the twenty-day period."

lawfully under all relevant municipal codes."  At a hearing on April 8, 2022, the circuit court took notice of the two judgments issued by the municipal court.  The City established that T & C failed to appeal those orders, the appeal period had lapsed, and nothing had been done since to rectify the violations.  On May 16, 2022, the circuit court issued an order finding that T & C was operating without a proper certificate of occupancy and that the violations posed a danger to the tenants.  So, the court ordered T & C to cease and desist operation on the premises, granted the City a money judgment for the fines issued by the municipal court, and appointed the City's counsel as special commissioner to sell the property and satisfy the judgment.

T & C now appeals from that order.

## II.  STANDARD OF REVIEW

This Court has held that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."[4]

---

[4] Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

And insofar as we review the circuit court's grant of injunctive relief, we have held that,

> [u]nless an absolute right to injunctive relief is conferred by statute, the power to grant or refuse or to modify, continue, or dissolve a temporary or a permanent injunction, whether preventive or mandatory in character, ordinarily rests in the sound discretion of the trial court, according to the facts and the circumstances of the particular case; and its action in the exercise of its discretion will not be disturbed on appeal in the absence of a clear showing of an abuse of such discretion.[5]

More specifically, "[i]n reviewing the exceptions to the findings of fact and conclusions of law supporting the granting [or denial] of [an] … injunction, we will apply a three-pronged deferential standard of review. We review the final order granting [or denying] the … injunction and the ultimate disposition under an abuse of discretion standard, we review the circuit court's underlying factual findings under a clearly erroneous standard, and we review questions of law *de novo*."[6] With these standards in mind, we proceed to the merits of the case.

---

[5] Syl. Pt. 11, *Stuart v. Lake Washington Realty*, 141 W. Va. 627, 92 S.E.2d 891 (1956).

[6] Syl. Pt. 1, *State v. Imperial Mktg.*, 196 W. Va. 346, 472 S.E.2d 792 (1996). *Accord Weaver v. Ritchie*, 197 W. Va. 693, 478 S.E.2d 366 (1996).

## III.  ANALYSIS

T & C argues that the circuit court erred in granting the City's request for injunctive relief ordering it to cease and desist operating the residential premises for lack of jurisdiction and insufficient evidence.  Second, it argues that the circuit court erred in granting the City a money judgment for the fines issued by the municipal court.  Third, it argues the circuit court erred in appointing the City's counsel as special commissioner to conduct a sale of the property.  We examine each assignment of error in turn.[7]

### A.      The Injunction

Relative to the injunctive relief granted by the circuit court, T & C first argues that the circuit court lacked jurisdiction over the matter as a whole for failure to observe the mandatory fieri facias process under West Virginia Code § 38-3-9.  In the alternative, T & C suggests that the circuit court abused its discretion when it "entered an order granting an injunction without sufficient evidence to support the same."  Specifically, T & C contends that the circuit court based its findings on the parties' proffer at the hearing, so

---

[7] T & C collapses its argument that the circuit court lacked jurisdiction to grant the city's injunctive relief into its argument with regard to the court's lack of jurisdiction to sell the property.  For the sake of clarity, we address those arguments separately because they are governed by two separate statutory schemes.

6

there was no evidence presented to support the cease-and-desist order, and "the entirety of said order is built upon [a] condemnable house of cards."

We address the threshold issue of jurisdiction first. T & C roots its jurisdictional challenges to the circuit court's order in West Virginia Code § 38-3-9 (2011), which sets forth a mandatory process for the issuance of a writ of fieri facias for judgment liens. Contextually, a writ of fieri facias is an order issued to the sheriff of the county authorizing the sheriff to enforce a judgment against a debtor by levy, seizure, or sale of his personal property.[8] It was an early common law mechanism used for executing judgments in order of personal property satisfaction before resorting to attachment of a debtor's real property that is still in place in some jurisdictions, including West Virginia.[9] According to *Bouvier's Law Dictionary*, "[i]t received its name from the Latin words in the writ (*quod fieri facias de bonis et catallis*, that you cause to be made of the goods and chattels)."[10] In West Virginia, the fieri facias automatically creates a lien on all of the debtor's personal property at the time that it is issued.[11] It remains in effect until the

---

[8] 30 Am. Jur. 2d *Executions and Enforcement of Judgments* § 14, at 50-51 (1994).

[9] *Id. See also Jarvis v. Porterfield,* 179 W. Va. 525, 370 S.E.2d 620 (1988), *infra* Section III.B.

[10] John Bouvier, *Bouvier's Law Dictionary* (8th ed. 1914).

[11] *See* W. Va. Code § 38-4-8 reproduced below in its entirety:

debtor's obligation to the judgment creditor is satisfied or the judgment creditor's right to the property is otherwise suspended.[12]

West Virginia has parallel statutory schemes that relate to the process for issuance of a writ of fieri facias: one that enforces judgment liens generally, and one that provides for collection of fines specifically arising from criminal cases.[13]   T & C cites the former, West Virginia Code § 38-3-9, entitled "Enforcement of judgment lien by suit"

> The lien of a judgment may be enforced in a court of equity after an execution or fieri facias thereon has been duly returned to the office of the court or to the justice from which

---

§ 38-4-8. Commencement and duration of lien of fieri facias.

A writ of fieri facias or execution shall create a lien, from the time it is delivered to the sheriff or other officer to be executed, upon all of the personal property, or the estate or interest therein, owned by the judgment debtor at the time of such delivery of the writ, or which he may acquire on or before the return day thereof, although such property was not levied on or capable of being levied on under the provisions of section six of this article. Such lien shall continue beyond the return day of the execution, whether the writ was levied or not, but shall cease whenever the right of the judgment creditor to levy the writ under which such lien arose, or to levy a new writ, ceases, under the provisions of section eighteen, article three of this chapter, or when such right is suspended by a forthcoming bond being given or forfeited, or by an appeal or otherwise. The lien created by this section shall be subject to the provisions of sections nine and ten of this article.

[12]*Id.*

[13] W. Va. Code § 62-4-11 (2020).

8

it issued showing by the return thereon that no property could be found from which such execution could be made: Provided, That such lien may be enforced in equity without such return when an execution or fieri facias has not issued within two years from the date of the judgment. If it appear to such court that the rents and profits of the real estate subject to the lien will not satisfy the judgment in five years, the court may decree such real estate, or any part thereof, to be sold and the proceeds applied to the discharge of the judgment.

T & C argues that the circuit court lacked jurisdiction to issue *injunctive* relief under that statute because the fieri facias process was not first observed. That argument fails for two reasons. First, it ignores the fact that while the City pursued a *civil* action to both enforce its money judgment and compel compliance, the original finding of non-compliance and issuance of fines was the result of a *criminal* proceeding. The process for execution of judgments for *criminal fines* issued by the municipal court in a criminal proceeding is found in West Virginia Code § 62-4-11, which provides the following:

On every judgment for a fine rendered by a circuit court, or other court of record having jurisdiction in criminal cases, if no special order be made by the court or judge, the clerk of the court shall issue a writ of fieri facias immediately after the term at which such judgment was rendered. And unless paid in court, a payment to any person other than the officer who holds the execution shall not discharge the judgment.[14]

---

[14] W. Va. Code § 62-4-11.

9

Because § 38-3-9 and § 62-4-11 both lay out separate schemes related to the process for issuance of a writ of fieri facias, we must determine which scheme properly applies to the facts before this Court. And we have held that "[t]he general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled."[15] W. Va. Code § 38-3-9 refers generally to liens resulting from a judgment. By comparison, under its plain terms, W. Va. Code § 62-4-11 specifically applies to "every judgment for a fine rendered by a circuit court, or other court of record having jurisdiction *in criminal cases*."[16] Accordingly, because the judgment the City sought to enforce arose from a fine rendered in a criminal case by the municipal court, § 62-4-11 lays out the proper process for execution in this case, and this provision is discussed more fully below in relation to T & C's challenge to the circuit court's authority to enforce the money judgment through sale of the property.

More fundamentally, West Virginia Code § 38-3-9 is wholly irrelevant to the circuit court's authority to issue *injunctive* relief. By its very nature, equitable relief in the form of an injunction is a different remedy than enforcement of a money judgment. West Virginia Code § 38-3-9 does not speak to or in any way limit a circuit court's

---

[15] Syl. pt.1, *UMWA by Trumka v. Kingdon*, 174 W. Va. 330, 325 S.E.2d 120 (1984).

[16] W. Va. Code § 62-4-11 (in part) (emphasis added).

10

jurisdiction or authority to grant *injunctive* relief to municipalities to ensure compliance with city ordinances.

Rather, West Virginia Code § 8-11-1(c) bears out the jurisdiction and authority of the circuit court to issue injunctive relief in the context of a municipality attempting to enforce compliance with its ordinances. West Virginia Code § 8-11-1 authorizes municipalities to enact ordinances to "carry into effect" its powers and authority and to impose penalties for violation of those ordinances. As its title[17] indicates, that statute expressly creates a right "to injunctive relief" and "to maintain an action to collect fines" for violations of those ordinances. Specifically as to injunctive relief, subsection (c) provides,

> [a]ny municipality may also maintain a civil action in the name of the municipality in the circuit court of the county in which the municipality or the major portion of the territory of the municipality is located to obtain an injunction to compel compliance with, or to enjoin a violation or threatened violation of, any ordinance of the municipality, and the circuit court has jurisdiction to grant the relief sought.[18]

---

[17] "Ordinances to make municipal powers effective; penalties imposed under judgment of mayor or police court or municipal judge; right to injunctive relief; right to maintain action to collect fines; additional assessment of costs"

[18] W. Va. Code § 8-11-1(c) (2023).

11

We have held that "[w]here the language of a statute is clear and without ambiguity, the plain meaning is to be accepted without resorting to the rules of interpretation."[19] The language of West Virginia Code § 8-11-1(c) is clear: the City had the authority to bring a civil action in the circuit court to obtain an injunction that would enjoin T & C from violating the City's building and fire prevention codes. And by the same authority, the circuit court had jurisdiction to grant the City's request for injunctive relief. So, T & C's argument that the cease-and-desist order was "void from the start" due to the court's lack of jurisdiction is simply incorrect under the plain meaning of West Virginia Code § 8-11-1(c).

Having established that the circuit court had jurisdiction to impose the cease-and-desist order, we now turn to the question of whether the court abused its discretion in granting injunctive relief. To guide lower courts in weighing all pertinent factors before granting an injunction, we have held that:

> [t]he granting or refusal of an injunction, whether mandatory or preventive, calls for the exercise of sound judicial discretion, in view of all the circumstances of the particular case; regard being had to the nature of the controversy, the object for which the injunction is being

---

[19] Syl. Pt. 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968).

12

sought, and the comparative hardship or convenience to the respective parties involved in the award or denial of the writ.[20]

In considering the relevant circumstances involved in this case, the court below found that allowing T & C to continue to host occupants inside of its rental premises would result in immediate and irreparable harm because of the dangers that the numerous code violations presented to the tenants. The record supports that finding: T & C was cited for exposed wiring, a complete lack of fire extinguishers in the building, extension cords used as a substitute for permanent wiring, portable heating units built into the steps, and a balcony or deck that was falling off the building, among other structural and electrical hazards. Even before the code violations were ever issued, the Fire Marshal had been contacted by a resident about an actual fire.[21] And the dangers posed by the numerous building and fire safety code violations had not yet been corrected when the matter came before the circuit court. In fact, at the April 28, 2022 hearing, the court heard proffered

---

[20] Syl. Pt. 4, *State v. Baker*, 112 W. Va. 263, 164 S.E. 154 (1932).

[21] T & C, which missed its opportunity to appeal the municipal court orders citing it for the fire prevention and building code violations, cannot now argue that there were no violations of the fire prevention and building codes before this Court. *See* Syl. Pt. 1, in part, *Conley v. Spillers*, 171 W. Va. 588, 301 S.E.2d 220 (1983) ("An adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, . . . [and] [a]n erroneous ruling of the court will not prevent the matter from being res judicata." (internal citations omitted)). Put another way, because there is no dispute that T & C failed to challenge the sufficiency of the evidence supporting the municipal court's decision, any substantive arguments addressing whether it was in violation of the City ordinances at the time of the code violations have been waived.

evidence that T & C had failed to rectify those violations in the eight months since they had been issued, noting in its order that T & C "had done nothing to rectify these violations and the same continue to this day," and that the violations "created a danger to the tenants that were being housed on the premises illegally." Even in view of the hardship on the tenants to vacate, considering the nature and severity of the dangers posed to the tenants in this case, we find that sufficient evidence supported the circuit court's decision to grant injunctive relief. So, the circuit court did not abuse its discretion in ordering T & C to cease and desist operating a residential rental business on the premises.

## B.     The Money Judgment

We now turn to the question of whether the circuit court erred in granting the City a money judgment for the fines issued by the municipal court.[22] T & C assigns as error the circuit court's decision to grant the City a money judgment but offers no argument to support that assertion. Instead, T & C makes much of the *sale of the property to satisfy*

---

[22] In their briefs to this Court both parties use the term "decretal judgment" to refer to the money judgment granted by the circuit court in the proceedings below. The language "decretal judgment" has typically been used by this Court in reference to matured installment payments from a child support or spousal support order. In this opinion, we simply refer to the judgment for the fines issued by the circuit court as just that—a money judgment.

*that judgment* but fails to cite any points of fact or law backing its contention that the court erred in *granting the judgment*, itself.

T & C's failure to cite to *any* legal authority in support of this argument further contravenes Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure. That rule requires that "[t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on."[23] Because T & C has met none of these requirements, we decline to address this inadequately briefed assignment of error.[24]

## C. The Sale of the Property

In its final assignment of error, T & C asserts that the circuit court erred in appointing a special commissioner to conduct a sale of the property to satisfy the money judgment. As discussed above, the purpose of the requirement of issuance of a writ of fieri facias is to allow the judgment creditor to satisfy the debt first from the debtor's personal

---

[23] W. Va. R. App. P. 10(c)(7).

[24] *See State v. Sites*, 241 W. Va. 430, 442, 825 S.E.2d 758, 770 (2019) ("Insofar as this assignment of error is inadequately briefed and fails to comply with the administrative order and our appellate rules, this Court will not address this assignment of error."); *State v. Back*, 241 W. Va. 209, 820 S.E.2d 916, 920 n.4 (2018) ("In his appellate brief, Mr. Back fails to cite to a single authority on this issue. Accordingly, we decline to address this inadequately briefed issue.").

property before resorting to attaching the debtor's real property and ordering it to be sold. T & C contends that the City failed to abide by that process as required by West Virginia Code § 38-3-9, and that the circuit court similarly erred in permitting the sale of the property prior to compliance with that provision. To reiterate, Section 38-3-9 provides:

> The lien of a judgment may be enforced in a court of equity after an execution or fieri facias thereon has been duly returned to the office of the court or to the justice from which it issued showing by the return thereon that no property could be found from which such execution could be made: Provided, that such lien may be enforced in equity without such return when an execution or fieri facias has not issued within two years from the date of the judgment. If it appear to such court that the rents and profits of the real estate subject to the lien will not satisfy the judgment in five years, the court may decree such real estate, or any part thereof, to be sold and the proceeds applied to the discharge of the judgment.[25]

Specifically, T & C argues that under this provision, the City did not wait two years after obtaining a writ of fieri facias before attempting to satisfy the judgment against T & C through the sale of its property. In fact, two years had not yet passed since the judgment had been rendered. More to the point, the City never sought or received issuance of a writ of fieri facias from the circuit court, so, it claims that by enforcing the judgment prior to the issuance and return of a writ, the circuit court committed error.

---

[25] W. Va. Code § 38-3-9 (2011).

16

We agree with the essence of T & C's argument—that the court erred in failing to follow the statutory process for the execution of the judgment. But, as we have previously discussed, it hinges its argument on the incorrect Code provision for issuance of a writ of fieri facias to enforce a judgment arising out of criminal proceedings. The appropriate fieri facias execution is found in West Virginia Code § 62-4-11, reached by way of West Virginia Code § 8-11-1(e) (2023).

West Virginia Code § 8-11-1(e) addresses the correct procedure for the execution of judgments for criminal fines issued by a municipal court, such as the fines at issue in this case. As previously discussed, this statute grants municipalities certain powers to "make municipal powers effective" including the "right to maintain action to collect fines[.]" The statute expressly permits imposition of fines and describes the mechanism for their enforcement, providing that "[a] certified transcript of a judgment for a fine rendered by a municipal court may be filed in the office of the clerk of a circuit court and docketed in the judgment lien book kept in the office of the clerk of the county commission[.]" W. Va. Code § 8-11-1(c). With respect to execution, Subsection (e) provides that "[e]xecution shall be by fieri facias issued by the clerk of the circuit court in the same manner as writs are issued on judgments for a fine rendered by circuit courts or other courts of record under the provisions of section eleven, article four, chapter sixty-two

17

of this code."[26]   West Virginia Code § 62-4-11—entitled "Fieri facias for collection of fines"—then provides, in relevant part, that "[o]n every judgment for a fine rendered by a circuit court, or other court of record having jurisdiction in criminal cases, if no special order be made by the court or judge, the clerk of the court shall issue a writ of fieri facias immediately after the term at which such judgment was rendered."[27]

Resolution of this assignment of error clearly lies within the procedure prescribed by the legislature regulating execution of judgments for criminal fines issued by the municipal court.   And in determining how to apply a specific statute, this Court has held that:

> [w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed.   In other words, where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation.   Therefore, a statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or

---

[26] W. Va. Code § 8-11-1(e) (2023).

[27] W. Va. Code § 62-4-11.

obscure meaning that reasonable minds might be uncertain or disagree as to its meaning.[28]

Here, West Virginia Code § 8-11-1(e) plainly requires execution of such judgments to be by the issuance and return of a writ of fieri facias: "Execution *shall be by fieri facias issued by the clerk of the circuit court… .*"[29] West Virginia Code § 62-4-11, on the other hand, outlines the proper timeline for the issuance on such writs: "if no special order be made by the court or judge, the clerk of the court shall issue a writ of fieri facias *immediately after the term at which such judgment was rendered.*"[30] Applying the plain meaning of these statutes, we hold that the process for the execution of a judgment for a fine rendered by a municipal court, under West Virginia Code § 8-11-1(e) (2023) and West Virginia Code § 62-4-11 (2020) is execution by fieri facias—issued either automatically by the clerk immediately after the term at which such judgment was rendered, or prior to that time by special order of the court.

We have stressed the distinction between the two parallel processes for issuance of a writ of fieri facias as demanding that a circuit court ascertain the character of

---

[28] *Ancient Energy, Ltd. v. Ferguson*, 239 W. Va. 723, 726, 806 S.E.2d 154, 157 (2017) (internal citations and quotations omitted).

[29] W. Va. Code § 8-11-1(e) (in part) (emphasis added).

[30] W. Va. Code § 62-4-11 (in part) (emphasis added).

the proceeding from which the judgment arose. Still, the process employed in those parallel schemes is identical but for the two-year waiting period required under § 38-3-9. So, insofar as a writ of fieri facias must be returned before the sale of real property is permitted under either scheme, this holding squares with our jurisprudence that the issuance and return of such a writ is a *condition precedent* to a circuit court's jurisdiction to enforce *any* judgment lien against real property in West Virginia, regardless of the nature of the proceeding from which the judgment arose.

For example, in *Jarvis v. Porterfield*,[31] the circuit court ordered property to be sold to satisfy certain debts after just a year had passed, and ordered a special commissioner be appointed to sell the property at auction.[32] This Court reversed the order, pursuant to West Virginia Code § 38-3-9—the general fieri facias statute—holding that "in the first category of suits, those conducted less than two years after the date of the judgment giving rise to the judgment lien, the issuance and return of an execution (a fieri facias) is a condition precedent to a circuit court's obtaining jurisdiction to enforce the judgment lien."[33] We also stated that, prior to a circuit court properly exercising jurisdiction, "it must appear that an execution was first issued directed to the sheriff of the county wherein the

---

[31] *Jarvis v. Porterfield*, 179 W. Va. 525, 370 S.E.2d 620 (1988).

[32] *Id*. at 526, 370 S.E.2d at 621.

[33] *Id*. at 528, 370 S.E.2d at 623.

judgment debtor resides, if a resident of this state, and that such execution was returned 'no property found.'"[34]  The court in *Jarvis* explained that the reason for the fieri facias requirement is two-fold.  First, the judgment creditor must "make a bona fide effort to obtain satisfaction of his debt by proceeding legally against the judgment debtor's personalty before allowing him to resort to the more drastic equitable remedy of forcing the sale of the judgment debtor's real estate."[35]  Also, the requirement provides the debtor with a notice that his land will be sold if he does not satisfy the judgment within the proscribed time.[36]

So, while the applicable statutes in this case, West Virginia Code § 8-11-1(e) and § 62-4-11, address the procedure for the execution of judgments arising out of criminal proceedings, the rationale behind the fieri facias requirement remains the same.  First, such a requirement ensures that municipalities will first try to satisfy money judgments resulting from fines via the debtor's personal property before ordering a sale.  And second, the fieri facias process affords a debtor notice and opportunity to pay off the fines before his or her property is sold.  Because the circuit court failed to follow that procedure before ordering the sale of T & C's property, we reverse its May 16, 2022 order insofar as it appointed the

[34] *Id.*

[35] *Id.*

[36] *Id.*

21

City's counsel as special commissioner to sell the property to satisfy the judgment without complying with the fieri facias process outlined in West Virginia Code § 62-4-11.[37]

## IV. CONCLUSION

For the reasons discussed above, we affirm the May 16, 2022 order of the Circuit Court of Kanawha County with regard to the issuance of injunctive relief in the form of the cease-and-desist directive, but reverse the portion of the circuit court's order permitting sale of the property. We remand for proceedings consistent with this opinion.

Affirmed, in part, and reversed, in part, and remanded.

---

[37] The City contends that the circuit court permissibly ordered the sale and the appointment of a special commissioner under West Virginia Code § 55-2-1 (2016), which states that "[a] court, in a suit properly pending therein, may make a decree or order for the sale of property in any part of the state, and may direct the sale to be for cash, or on such credit and terms as it may deem best; and it may appoint a special commissioner or special receiver to make such sale." Because we now hold that the requirement to issue a writ of fieri facias is a condition precedent to a circuit court's jurisdiction to enforce judgments for criminal fines issued by the municipal court, an action to enforce the judgment against T & C was premature, and therefore not "properly pending therein" under that statute.

22